# Illinois Official Reports

## Supreme Court

***People v. Harvey*, 2018 IL 122325**

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. SHANE D. HARVEY, Appellant. |
| Docket No. | 122325 |
| Filed | September 20, 2018 |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Adams County, the Hon. Scott H. Walden, Judge, presiding. |
| Judgment | Appellate court judgment affirmed as modified. |
| Counsel on Appeal | James E. Chadd, State Appellate Defender, Jacqueline L. Bullard, Deputy Defender, and Mariah K. Shaver, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

Lisa Madigan, Attorney General, of Springfield (David L. Franklin, Solicitor General, and Michael M. Glick and Joshua M. Schneider, Assistant Attorneys General, of Chicago, of counsel), for the People. |

Justices              CHIEF JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Justices Thomas, Kilbride, Garman, Burke, Theis, and Neville concurred in the judgment and opinion.


# OPINION

¶ 1      In this appeal, defendant asks us to consider, pursuant to Illinois Supreme Court Rule 615 (eff. Jan. 1, 1967), forfeited claims that the circuit court has erroneously ordered certain fines or fees. The State has conceded error on one assessment, and another—that the court never ordered—has been administratively rectified. We find there was no error with respect to imposition of the remaining fee at issue. Consequently, there is no error to address and no need to determine whether relief would be available by way of Rule 615. We, therefore, affirm the judgment of the appellate court, with the modification hereinafter noted.

¶ 2                                     BACKGROUND

¶ 3      Defendant, Shane D. Harvey, was charged with domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2012)), with that charged offense elevated to a Class 4 felony due to a prior aggravated battery conviction (see *id.* § 12-3.2(b)). Following a November 18, 2013, trial, the jury found defendant guilty as charged. Defendant, through counsel, filed a posttrial motion, and that motion was ultimately denied.

¶ 4      On February 4, 2014, the Adams County circuit court sentenced defendant to the maximum sentence of three years in prison, followed by a four-year term of mandatory supervised release. As part of the judgment, the court ordered defendant to pay certain fines and fees clearly identified—with correlative statutory citations—on a separate sheet titled "Felony Fines, Costs and Assessments." Defendant expressed a desire to appeal, so the court appointed the Office of the State Appellate Defender (OSAD) to represent him. Notice of appeal was filed on February 10, 2014, and the appeal was docketed as case No. 4-14-0100.

¶ 5      While that appeal was pending, on March 6, 2014, defendant filed a *pro se* "Petition for Reduced Sentence," alleging, *inter alia*, that his trial counsel should have pointed out several errors that appeared in the presentence investigation report (PSI)—errors which, defendant claimed, caused the trial court to impose the maximum sentence. Defendant—who was obviously otherwise active in his own behalf and attentive to his case—did not raise any issue regarding the imposition of fines, fees, or *per diem* credit. As a result of defendant's *pro se* filing, the trial court reappointed defendant's trial counsel. On April 16, 2014, the appellate court granted OSAD's motion for the voluntary dismissal of the pending appeal. *People v. Harvey*, No. 4-14-0100 (Apr. 16, 2014) (dismissed on defendant's motion).

¶ 6      On June 25, 2014, trial counsel filed a document—purportedly pursuant to Rule 604(d)—averring that she had consulted with defendant and had "ascertained his contentions of error in the sentencing hearing." See Ill. S. Ct. R. 604(d) (eff. Feb. 6, 2013). Counsel also claimed to have "examined the transcripts of the trial and of the sentencing hearing" and to have "ascertained that no additional or amended pleadings" were "necessary to adequately

- 2 -

present his contentions of error." That same day, at a hearing on defendant's motion, defendant's attorney indicated she wished to stand on defendant's *pro se* motion. After considering arguments of counsel, the trial court entered an order denying defendant's motion. OSAD was again appointed as counsel on appeal. Notice of appeal was filed June 30, 2014.

¶ 7 On appeal, defendant first argued that the circuit court erred by failing to conduct any inquiry into his claim that his trial counsel had rendered ineffective assistance. As the appellate court noted, "[s]pecifically, in his *pro se* motion to reduce his sentence, defendant had stated: 'Several points in the PSI were incorrect (which should have been argued by "my" public defender at sentencing).' " 2017 IL App (4th) 140576-U, ¶ 11. Citing relevant colloquies of the circuit court and the attorneys, the appellate court observed that the circuit court, at the hearing on defendant's motion, "addressed neither those alleged errors in the PSI nor defendant's contention that counsel failed to address those alleged errors at sentencing." *Id.* ¶ 14. The appellate court concluded that the circuit court's failure to "conduct *any* inquiry" warranted "remand *** to the trial court for that stated purpose." (Emphasis in original.) *Id.* ¶ 21.

¶ 8 The court then turned to defendant's contentions that some of his fines and fees were improperly assessed and that he otherwise did not receive the proper *per diem* credit to which he was entitled. The court noted the State's concession of error with respect to one of defendant's contentions and the State's argument—reiterated before this court—that the remainder of defendant's claims were forfeited for failure to raise them in the circuit court. *Id.* ¶ 23.

¶ 9 Without invoking the plain-error rule and citing *People v. Buffkin*, 2016 IL App (2d) 140792, ¶ 11, for the proposition that the State's confession of error permits review of an otherwise precluded claim, the appellate court accepted the State's concession that the $20 court-appointed special advocate (CASA) fee is comparable to the Children's Advocacy Center (CAC) fee, that it is actually a fine, and that it is thus subject to the application of *per diem* credit. 2017 IL App (4th) 140576-U, ¶ 24.[1] The appellate court referenced *People v. Millsap*, 2012 IL App (4th) 110668, ¶ 30, for supporting authority that, notwithstanding the statutory label of "fee," the CAC fee is actually a fine. In light of the State's concession and the holding of *Millsap*, the appellate court, as an additional charge to the circuit court upon remand, directed the circuit court to apply defendant's $5 *per diem* credit toward the $20 CASA assessment. 2017 IL App (4th) 140576-U, ¶ 24.

¶ 10 The appellate court then summarized defendant's remaining claims: (1) the $2 state's attorney automation fee is actually a fine and is subject to *per diem* credit, (2) the sheriff's fee was improperly assessed, (3) the circuit clerk should not have assessed the $250 deoxyribonucleic acid (DNA) fee because defendant was already in the DNA database, and (4) the trial court should not have imposed the $10 Crime Stoppers assessment. The appellate court rejected defendant's first claim, relying upon its prior decision in *People v. Warren*, 2016 IL App (4th) 120721-B, ¶ 115, wherein the court held the state's attorney automation fee is in

---

[1]Defendant in this case raised the monetary assessment issues in a timely filed appeal in which he asserted an issue otherwise properly preserved, *i.e.*, an issue relating to the ineffectiveness of his trial counsel and the circuit court's failure to adequately inquire regarding same. Revestment of jurisdiction—as discussed in *Buffkin* and *People v. Griffin*, 2017 IL App (1st) 143800, *appeal allowed*, No. 122549 (Nov. 22, 2017)—is not relevant here; *forfeiture* is. We express no opinion with respect to those procedural circumstances or the analyses of those cases.

fact a fee because it is intended to reimburse the state's attorneys for their expenses related to automated record-keeping systems.[2] 2017 IL App (4th) 140576-U, ¶ 25.

¶ 11 With respect to defendant's remaining contentions, "relat[ing] to the imposition of fees, not fines," the appellate court concluded *those* claims "do not rise to the level of errors affecting the fundamental fairness or integrity of the judicial process." *Id.* ¶ 26. The only authority cited by the appellate court is a "*Cf.*" citation to this court's decision in *People v. Lewis*, 234 Ill. 2d 32, 48 (2009), with a parenthetical explanation that the "imposition of a fine without an evidentiary basis implicates fundamental fairness and the integrity of the judicial process sufficient to apply plain-error review." 2017 IL App (4th) 140576-U, ¶ 26. The appellate court considered the fine-fee distinction determinative: "[D]efendant cites cases applying plain error to challenges regarding the imposition of fines, not fees. As such, we agree with the State that defendant forfeited review of the issues he raises in this appeal pertaining to the imposition of fees. Such issues were not raised in the trial court proceedings, are forfeited, and are not subject to plain-error review." *Id.*

¶ 12 ANALYSIS

¶ 13 Before this court, defendant claims that three assessments were erroneously imposed: the DNA analysis fee, the sheriff's fee, and the Crime Stoppers assessment. No other assessments are challenged. Although he concedes that those claims were not preserved by timely objection in the circuit court or inclusion in a postsentencing motion, defendant submits that error with respect to those three assessments may be remedied pursuant to the provisions of Rule 615.

¶ 14 Rule 615 provides as follows:

"(a) Insubstantial and Substantial Errors on Appeal. Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court.

(b) Powers of the Reviewing Court. On appeal the reviewing court may:

(1) reverse, affirm, or modify the judgment or order from which the appeal is taken;

(2) set aside, affirm, or modify any or all of the proceedings subsequent to or dependent upon the judgment or order from which the appeal is taken;

(3) reduce the degree of the offense of which the appellant was convicted;

(4) reduce the punishment imposed by the trial court; or

(5) order a new trial." Ill. S. Ct. R. 615 (eff. Jan. 1, 1967).

¶ 15 In order to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required. *People v. Hillier*, 237 Ill. 2d 539, 544 (2010); see also 730 ILCS 5/5-8-1(c) (West 2008) ("[a] defendant's challenge to the correctness of a sentence or to any aspect of the sentencing hearing shall be made by a written motion filed within 30 days following the imposition of sentence"). "Under the plain-error rule, codified in Supreme Court Rule 615, '[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded' unless the appellant demonstrates plain

---

[2]Neither party disputes the character of the state's attorney automation fee before this court.

- 4 -

error." *People v. Leach*, 2012 IL 111534, ¶ 60 (quoting Ill. S. Ct. R. 615 (eff. Jan. 1, 1967)). Pursuant to the plain-error doctrine, a reviewing court may address a forfeited claim in two circumstances: " '(1) where a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error and (2) where a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence.' " *People v. Hood*, 2016 IL 118581, ¶ 18 (quoting *People v. Belknap*, 2014 IL 117094, ¶ 48). The initial step under either prong of the plain-error doctrine is to determine whether the claim presented on review actually amounts to a "clear or obvious error" at all. *People v. Staake*, 2017 IL 121755, ¶ 33.

¶ 16    Before we take that initial step, however, we pause to consider what is actually in controversy here.

¶ 17    The State suggests that defendant's challenges to the DNA identification fee and the Crime Stoppers "fine" are moot "because there is no effectual relief to be granted: defendant's DNA identification fee does not exist, even as a scrivener's error in the clerk's electronic accounts receivable records, and his Crime Stoppers fine was entirely offset by presentence custody credits." The State notes, and the record confirms, that the circuit court in fact assessed no DNA identification fee, and the State represents—without contradiction—that the circuit clerk was contacted by an attorney for the State and has corrected its electronic accounts receivable records to remove the erroneous reference to "the unassessed fee." In short, there is no fee to vacate. Moreover, the State now concedes it was error for the circuit court to impose a Crime Stoppers "fine," pursuant to section 5-6-3(b)(13) of the Unified Code of Corrections (730 ILCS 5/5-6-3(b)(13) (West 2012)), because, as noted in *People v. Jernigan*, 2014 IL App (4th) 130524, ¶ 48—among other cases—that "fine" may be imposed only as a condition of probation. However, the State argues that erroneous imposition of that assessment is moot because it is in fact a fine entirely offset by defendant's presentence custody credits. In light of the foregoing considerations, *i.e.*, correction and offset, respectively, the State argues that issues relating to the DNA assessment and the Crime Stoppers assessment are moot.

¶ 18    In his reply brief, the defendant first acknowledges that the DNA fee has been vacated, though defendant notes the manner in which it was done—at the request of an attorney for the State—and expresses concerns over reliance upon the State in future cases where a DNA fee is improperly assessed a second time following a prior DNA submission and fee. Though defendant concedes that this issue is moot, he argues that this court should consider the issue under the public interest exception to the mootness doctrine. Defendant then notes that the State concedes the imposition of a Crime Stoppers "fine" was unauthorized, and defendant agrees with the State's assertion that his presentence custody credit covered his applicable fines, including the Crime Stoppers "fine." In light of those accords, defendant necessarily agrees with the State's assessment that this issue is moot. Defendant requests that we also consider *this* issue under the public interest exception to the mootness doctrine.

¶ 19    An issue on appeal is moot where it no longer presents an actual controversy. *Cf. In re J.T.*, 221 Ill. 2d 338, 349 (2006). Reviewing courts will not decide moot or abstract questions or render advisory opinions. *Id.* A court of review may, however, review an otherwise moot issue pursuant to the public interest exception to the mootness doctrine. *Id.* at 350. The narrowly

construed public interest exception to the mootness doctrine requires that (1) the question presented is of a public nature, (2) a need exists for an authoritative determination of the question for the future guidance of public officers, and (3) the question is likely to recur. *In re Jarquan B.*, 2017 IL 121483, ¶ 17. We find that the public interest exception to the mootness doctrine does not warrant any meaningful discussion of the DNA fee issue, for which defendant could receive no further relief, and it merits only a brief discussion of the Crime Stoppers assessment. We begin with those issues.

¶ 20    First, with respect to the DNA assessment—well, there never was a DNA fee assessed by the court. The judgment sheet titled "Felony Fines, Costs and Assessments," dated the day of the sentencing hearing and signed by the sentencing judge, clearly marked—as should be the procedure in all cases—the fines, fees, and costs the judge imposed. The judge left blank the line associated with the "$250 DNA Analysis Fee." This court has affirmed and reaffirmed, in a succession of recent cases, the principle that the circuit clerk's assessment of a fee not authorized by the circuit court does not reflect the judgment of the court. See *People v. Gutierrez*, 2012 IL 111590, ¶¶ 21-24; *People v. Hardman*, 2017 IL 121453, ¶ 55; *People v. Vara*, 2018 IL 121823, ¶¶ 25, 28. No one now disputes that the erroneous DNA fee entry in this case has been deleted from the circuit clerk's electronic accounts receivable records. No further relief can be afforded defendant. Moreover, there is no question that a defendant who, like this defendant, is already in the DNA database cannot be ordered to pay another DNA analysis fee. See *People v. Marshall*, 242 Ill. 2d 285, 303 (2011) ("[S]ection 5-4-3 authorizes a trial court to order the taking, analysis and indexing of a qualifying offender's DNA, and the payment of the analysis fee only where that defendant is not currently registered in the DNA database."). Thus, the second criterion for invocation of the public interest exception is lacking here: there is no need for "an authoritative determination of the question *** for the future guidance of public officers." See *In re Shelby R.*, 2013 IL 114994, ¶ 16. *Marshall* provides the guidance and the pertinent authority.

¶ 21    In our view, the same deficiency would seem to militate against public interest consideration of the circumstances requisite to the Crime Stoppers assessment. It should be self-evident to all that the section 5-6-3 assessment does not apply here. All that is required is that one actually *look* at the authorizing statute. A look at the heading of section 5-6-3 tells us that it pertains to "Conditions of Probation and of Conditional Discharge." Subsection 13 sets forth one of those conditions, but it does not apply unless the defendant has been sentenced to *probation or conditional discharge*. This defendant was *not* so sentenced; hence, subsection 13 obviously does not apply to him. We strongly encourage state's attorneys, defense counsel, and sentencing judges to look at the authorizing statutes before the court imposes attendant fines and fees. The circumstances for application of this fine seem straightforward enough: either incarceration (no assessment) or community-based disposition (potential assessment). See generally *People v. Goossens*, 2015 IL 118347, ¶ 10 ("This court has *repeatedly* interpreted section 5-6-3(b) of the Code (730 ILCS 5/5-6-3(b) (West 2010)) to mean a court may in its discretion require *a probationer* to comply with any of the enumerated conditions" therein. (Emphases added.)) Since the parties agree that the assessment should not have been imposed in the first place, it does not matter here what it is—fine or fee.

¶ 22    That brings us to the assessment actually contested in this case: the sheriff's fee. Defendant's contention that the sheriff's fee—imposed pursuant to section 4-5001 of the Counties Code (55 ILCS 5/4-5001 (West 2012)), as permissibly increased by county

ordinance—was erroneously excessive. The basis for defendant's argument is that the Adams County ordinance, which increased the amount that could be charged for various services performed by the sheriff, did not specifically address the service of subpoenas and the fee for return of process served. Thus, defendant argues that those services should have been charged at the lower *statutory* rate.[3] In brief, the State's contention is that the language of the county ordinance could be construed to subsume service of subpoenas and return of process and that was the intent of county officials when they enacted the ordinance.

¶ 23   Defendant bears the burden of demonstrating a clear or obvious error. *People v. McLaurin*, 235 Ill. 2d 478, 497-98 (2009). He has not carried that burden.

¶ 24   Defendant's argument that the sheriff's fee exceeded allowable limits is premised upon the contention that the Adams County ordinance (Adams County, Ill., Ordinance to Increase Fees in the Sheriff's Office (Oct. 11, 2011)) that purported to raise the sheriff's fees again in 2011—after they had been increased in 2003 above the monetary limits set forth in the applicable statute—was ineffective to increase the fees for "subpoenas" and "criminal process" because neither term was specifically used in the 2011 ordinance.[4] The enacting ordinance and the accompanying cost study required for the fee increase refer only to "civil process service and return." In the 2011 ordinance, the then "current fee amount" for that service was listed as $30, with a "proposed new price" of $40, which was adopted by the county board. There is, in the ordinance, no breakdown for types of service beyond "civil process," "tax notice," and "warrant/body attachment," whereas section 4-5001, the base statutory provision, includes an extensive list of specific categories of service. See 55 ILCS 5/4-5001 (West 2012). Although defendant, in his reply brief, instructs us on the difference between criminal and civil process, the statute does not draw a generic distinction between "civil" and "criminal" process. For example, there is no differentiation between subpoenas served in civil and criminal cases.

¶ 25   The State argues that the term "civil process," as employed in the ordinance and accompanying cost study, is intended to—and does in fact—subsume service of subpoenas in criminal cases. The State notes that the term "civil process" is defined in the cost study attached to the ordinance and is explicitly "made a part [t]hereof." The State claims that term is defined as "service of all papers except tax notices and warrants." That is a somewhat loose interpretation of the definition in the cost study. However, the cost study *does* state: "Papers of the same priority that are served using the same method were classified generically as 'Civil Process' and the cost of activity was determined as a group."

¶ 26   This court's primary objective in interpreting a statute or ordinance is to ascertain and give effect to the intent of the legislative body. *Henderson Square Condominium Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 67. What was true 64 years ago is still true today: "All laws should receive a sensible interpretation, and [an] *** ordinance will not be so literally construed as to produce an absurd result which, even though within its letter, is contrary to the obvious legislative intent." *Village of Itasca v. Luehring*, 4 Ill. 2d 426, 429 (1954). We do not

---

[3]The statutory rate for service of a subpoena is $10 and $5 for return of process. 55 ILCS 5/4-5001 (West 2012).

[4]There is no copy of the 2003 ordinance in the record, so we have no way of knowing what language was employed therein.

believe that the county board intended that service of "civil process" be compensated, under the most recent fee enhancement ordinance, at $40, while "criminal process" and all subpoenas are compensated at $10, the amount set forth in the base statute. It appears to us that the umbrella term, "civil process," is sufficient, as defined in the ordinance, to cover the fees charged here. If it were necessary to read the terms at issue into the ordinance, we would do so using our analogous authority with respect to statutory omission. See *People v. Masterson*, 207 Ill. 2d 305, 329 (2003) ("When the intent of the legislature is otherwise clear, the judiciary possesses the authority to read language into a statute which has been omitted through legislative oversight.").

¶ 27    If an error has been made, it would seem it is, as the State argues, one in defendant's favor. It appears that *some* of the charges for served subpoenas were entered at the previous rate of $30.[5] Defendant does not challenge the prior ordinance.[6] He has not demonstrated error.

¶ 28    In sum, pursuant to the State's confession of error, we vacate the Crime Stoppers assessment, and we accept the State's representation—undisputed by defendant—that there is no DNA fee assessed in the circuit clerk's database. There, of course, never was a judicially imposed assessment in that regard. In light of the foregoing circumstances, the appellate court judgment is modified to the extent that the Crime Stoppers assessment is vacated. In all other respects, as regards issues actually raised before this court, concerning judicially imposed assessments, the judgment of the appellate court is affirmed.[7]

¶ 29    Appellate court judgment affirmed as modified.

---

[5]The charge of $30 for the service of 10 subpoenas and $40 for the remaining 5 would, as the State points out, account for the total sheriff's fee of $515, when "the one dollar for the one-mile round trip per subpoena" is included.

[6]Defendant opines that "the State cites no authority providing for assessing a Sheriff's fee pursuant to a superceded version of an ordinance, or otherwise allowing for a $31 fee." In light of our finding that the 2011 ordinance permitted a charge of $40 for service and return of each subpoena, we deem it unnecessary to respond to defendant's argument that a $30 charge in his favor was error. What relief could we provide? Moreover, since defendant has not provided a copy of the 2003 ordinance, we have no way of knowing what language was employed in that ordinance, such that the 2011 enactment would be, in defendant's words, "superceding."

[7]In passing, we welcome the enactment of Public Act 100-987 (eff. in part July 1, 2018, in part July 1, 2019), which will bring to sentencing assessments much needed simplicity and transparency that will inure to the benefit of the parties and courts. The Public Act, laudably, will also empower the sentencing courts to grant payment waivers in those circumstances where that relief is warranted.