NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190065-U

NO. 4-19-0065

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 29, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| MICHAEL J. MEASAW, | ) | No. 18CF121 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

_____

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Knecht and Justice Steigmann concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Defendant forfeited review of his claim that the trial court relied on improper sentencing factors in imposing his 30-year prison sentence. The trial court did not fail to consider mitigating evidence during defendant's sentencing hearing. Defense counsel was not ineffective for failing to object to the trial court's restitution order. The trial court's restitution order was supported by the evidence.

¶ 2     On November 5, 2018, defendant, Michael J. Measaw, pleaded guilty to armed robbery (720 ILCS 5/18-2(a)(1) (West 2016)), residential burglary (*id.* § 19-3), and two counts of home invasion (*id.* § 19-6(a)(2)). Defendant was sentenced to 30 years' imprisonment. Defendant appeals, arguing the trial court erred in sentencing him to 30 years in prison because, in doing so, the court relied on improper sentencing factors and failed to consider certain mitigating evidence. Defendant also argues that defense counsel was ineffective for failing to challenge the court's restitution order or, in the alternative, that the court erred by ordering restitution without

evidentiary support. We affirm.

¶ 3                                                I. BACKGROUND

¶ 4            On April 19, 2018, the State charged defendant with armed robbery (720 ILCS 5/18-2(a)(1) (West 2016)), residential burglary (*id.* § 19-3), and two counts of home invasion (*id.* § 19-6(a)(2)). In November 2018, defendant entered an open guilty plea to the four charges. In support of defendant's plea, the prosecutor informed the trial court that, if the case proceeded to trial, the State would call, among other witnesses, Nicholas McDugle and Haley Nichols. According to the prosecutor, both McDugle and Nichols would testify that on April 18, 2018, defendant entered their home while "armed with a dangerous weapon" and took "some money, loose change, as well as an Xbox." McDugle and Nichols would further testify that, after entering their home, defendant injured McDugle, causing "severe lacerations to his arm," as a result of which McDugle required "several layers of staples and stitches." Finally, the two witnesses would testify that, after entering their home, defendant's accomplice struck Nichols on the head with a rock, as a result of which Nichols required stitches and staples. The trial court accepted defendant's plea and ordered a presentence investigation report (PSI) be prepared.

¶ 5            Defendant's PSI was filed on December 24, 2018. The report included extensive details relating to the offense, including details from interviews with Nichols, McDugle, and defendant. In his interview, defendant "admit[ted] [to the] commission of the offense but note[d] due to being under the influence[,] his recollection of the incident [was] unclear and partial." Defendant expressed remorse about his conduct, stating he would not have committed the offense "if not under the influence of drugs," and stating he knew Nichols personally, had "no previous conflict" with either Nichols or McDugle, and "held no ill will towards them." According to the PSI, defendant had previously been convicted of, among other offenses, criminal trespass to a

residence and had four prior convictions for burglary offenses, one of which occurred when he was a juvenile. The PSI also detailed defendant's social history. Among other things, the PSI indicated defendant's parents had physically abused him when he was a minor, he had a history of mental health and substance abuse issues, and he had three children. In a section titled "Restitution/Victim Statement," the PSI reported: "Ms. Nichols and Mr. McDugle have submitted requests to the State's Attorney seeking restitution be ordered in the amounts of $6,389.80 and $1,028.96 respectively; those amounts are related to medical expenses incurred."

¶ 6        In December 2018, the trial court conducted defendant's sentencing hearing. At the beginning of the hearing, in response to the court's inquiry, neither the prosecutor nor defendant's counsel objected to the PSI or identified any necessary changes or corrections to the PSI. As aggravating evidence, the State presented victim impact statements from McDugle and Nichols. According to McDugle, on April 18, 2018, he and Nichols, his girlfriend, were at their home waiting for a relative of Nichols's former roommate to remove some items from their house. When the relative arrived, she was accompanied by defendant. After McDugle helped defendant and the relative load the items in the relative's car, the relative and defendant left, and McDugle started playing a video game. An hour later, McDugle heard a knock at his door, and Nichols opened it. McDugle stated that, after Nichols opened the door, two masked men entered and one of them "cracked [Nichols] on top of the head with a rock." The other man, who McDugle identified as defendant, then approached him, punched him twice in the head, and stabbed him in the bicep with a knife, severing his muscle. McDugle described the resulting altercation as follows:

> "The defendant had already managed to stab me in my right bicep severing it
> completely in half. In my right hand, the defendant and I were both holding onto
> the handle of a knife. In my left hand, I was actually holding the blade of the knife.

All I could think was that this guy was trying to slit my throat and kill me, then go after [Nichols] and take whatever they wanted. Also the defendant tried to choke me out at first after being stabbed. It felt like an eternity of tug of war him pulling towards my neck and me fighting pushing back towards the couch."

McDugle further stated that, eventually, defendant called the other masked man over to help him, and the other man began kicking McDugle. McDugle then "tried to negotiate with" defendant and convinced him that they would walk to the door together and defendant would leave. The two then moved to the door, neither letting go of the knife. Once McDugle and defendant reached the door, defendant ran out of the house, and McDugle called the police. McDugle stated that, as a result of the incident, he was unable to return to work and had to rely on disability income. He and Nichols began having trouble paying bills, including their medical bills.

¶ 7        Nichols also presented a victim impact statement, which was similar to McDugle's. Nichols added that, after she was struck in the head with the rock, the other man who entered her home "drug [her] room by room" asking if anyone else was in the residence and demanding that she give him money. Nichols gave the man all the cash she had in the house: $187. The man then released Nichols, grabbed McDugle's Xbox gaming system, and then started attacking McDugle. Nichols recounted that, since the incident, she had become "uncomfortable in public places or large crowds with little personal space because of [her] newfound discomfort" and started having trouble sleeping. She had to quit one of her jobs and the couple was struggling financially. Nichols further stated that "[t]he doctors' bills began to pile up costing [them] thousands of dollars [they] no longer had."

¶ 8        Defendant presented no mitigating evidence.

¶ 9        After the presentation of evidence, the State requested the court impose a 30-year

- 4 -

prison sentence. During his argument, the prosecutor noted: "There are a number of factors in aggravation that [are] relevant in this particular case. Many of the factors in aggravation that are actually listed in the statute are inherent in the offense itself so we can't obviously double enhance or make those much worse. But I think that's showing or telling of how serious this crime really is." Defense counsel requested the court impose a 10-year prison sentence, highlighting defendant's substance abuse history, cooperation with the police investigation, remorse, troubled upbringing, mental health issues, and desire to engage in anger management, mental health, and substance abuse services, all as detailed in the PSI.

¶ 10       Defendant presented the following statement in allocution: "There's no amount of words that can take back what happened. I am sorry for it. If I was in my right mind, I don't think it would have happened. But I'm not trying to make an excuse for what I did."

¶ 11       In issuing its sentence, the trial court stated as follows:

"Well, to begin with, I will have a judgment of conviction entered on [c]ount 1 for the Class X felony offense of armed robbery, [c]ounts 2 and 3 for the Class X felony offenses of home invasion, and [c]ount 4 for the Class 1 felony offense of residential burglary.

The, as [the prosecutor] pointed out, the statute is pretty clear how serious this matter is and how strong of a sentence the [c]ourt should consider under the facts and circumstances of this case; and we know that because most of the time when crimes are eligible for probation the statute directs the [c]ourt to sentence a person to probation. That is the preferred disposition of the legislature who represent the people; and in this case, that's not an option. ***

*** But my point is simply that the legislature says, hey, in this case it's so

bad, and as [the prosecutor] pointed out many of the factors the [c]ourt otherwise would consider are inherent in the offense, but it's so bad that this individual needs to be in prison.

*\*\**

In this case, there are many factors, well, I shouldn't say many, but a number of factors in aggravation that stand out as argued by [the prosecutor]. Specifically the [d]efendant's prior record. It's one of the worst records I have seen short of murder. But it's a horrible record. It's, you know, there's nobody to blame of course but the [d]efendant. But when you look at that record, you can't pretend that this is a shock that he did it again. I mean, that's pretty much consistent with what he does. And I would say, and I certainly recognize that the [d]efendant is relatively young; but at some point it needs to kick in; and by 28, 27, after spending time in the Department of Corrections, the light bulb needs to go on or I'm wondering if it's never going to go on.

But, you know, in this case, it's one thing when you are, let's see, a juvenile and you commit burglary, a Class 2 felony. But then when you go on as an adult to do a residential burglary over and over and burglary over and over, it just tells the [c]ourt that, you know, sometimes I think, and I certainly wouldn't want your upbringing, but there are people that just are not going to get it. And if you don't get it after going to prison and doing it a number of times, I'm very concerned.

You can be sorry; but that doesn't, you know, that doesn't help. And I understand, you know, that you didn't force a trial in this case. But boy, based on your prior record, you know, it seems like the sentencing range here is pretty

generous.

Deterrence is obviously a very, very strong factor. I've been doing this job, felony cases for ten years; and this is up there with some of the worst I've ever seen. I can't imagine anything more scary or frightful than somebody bursting into your house like that. That's the one place where you are supposed to feel safe, and you can't get that back. They can't get it back. They are never going to get it back. If we can't feel safe in our homes, where can we feel safe? And you've invaded that privacy more than once.

And I don't care how high you were or what pills you were on. I have addicts in here all day every day of the week. This courtroom is full of drug addicts. That's a copout. In this case, that's a copout. I don't know very many drug addicts who go to this extreme to get $180. The harm that drug addicts normally cause is selling drugs in the community, breaking into cars, breaking into garages. They don't force themselves into a house and severely injure people to get an Xbox and $180. To me that's a rotten apple, and unfortunately we have some of those.

And so deterrence is a very strong factor. People have got to feel safe in their homes. They absolutely—I can't even—There's just no words. I'm surprised that the victims were able to come up with as much as they were. I don't know how you describe what you have taken away from them.

And then the fact that you were on parole at the time is sickening also. I don't know who was monitoring you on parole; but if you were engaged in drug use and that type of behavior, then you obviously weren't doing very well on parole.

[The prosecutor] often says, he didn't say it in this case, but he often says

there's two types of people. There's people we're mad at, and there's people we're afraid of. And I'm mad at the people that sell drugs in this community, and I'm mad at the people that break into cars and garages to get money for drugs. But I'm afraid of the people that are going to go to this extent in our community that are going to, I guess you were going to try to kill them. I don't know what else the purpose was. And while you might have wanted some money out of it, it doesn't seem like that was the main thrust of it. That's what's kind of concerning.

People that want to break in and steal money they come in with a weapon of some sort and they demand money. They don't come in and throw a big rock at some poor, young girl that answers the door and then immediately go to the other guy in the house with a knife and start killing him, stabbing him and trying to cut his throat.

I'm left with the only thing I can think is that you wanted to kill them and then get the measly 180 bucks out of it. I don't know—I don't understand. You don't need to engage in that kind of conduct to rob somebody. It's more than a simple robbery because I need more drugs.

I can't find a mitigating factor. I appreciate [defense counsel's] argument, but I can't find a mitigating factor. There's not one.

In my opinion, and I think [the prosecutor] knows this and [defense counsel] knows this, I don't very often, you can count on one hand the number of times I've sentenced somebody to the maximum sentence in prison. I don't do it. But that's because most of the time we don't have people that engage in this severe of a crime. It doesn't—In terms of these particular charges, I think [the prosecutor] is correct.

It doesn't get any worse. Thank God we're not in here for a sentencing on murder because that was pretty close.

But when I look at the aggravating factors that stand out, deterrence and your record and parole, and the, just the nature and circumstances of this entire crime, I want to keep you out of the public as long as I possibly can. And to be perfectly frank with you, if I could give you more, I would. 30 years doesn't seem like enough to me for what you have taken from these people for really no reason at all.

So I am going to sentence you to 30 years in the Department of Corrections at 85%."

In addition to defendant's prison sentence, the court also entered a restitution order, requiring defendant to pay $6,389.80 to Nichols and $1,028.96 to McDugle within one year of his release from prison.

¶ 12 In January 2019, defendant filed a motion to reconsider sentence. In his motion, defendant alleged, in relevant part, that his 30-year sentence was excessive "in respect of the factors in mitigation" and was "disproportionate to the nature of the offense." At the hearing on defendant's motion, defense counsel argued the trial court's sentence was excessive given that defendant "owned up to what he did," expressed a desire to participate in counseling, and had a young child. Defense counsel also argued the sentence was excessive because it "d[id] [nothing] to restore [defendant] to a member of society." Following the parties' arguments, the court acknowledged the mitigating sentencing factors addressed by defendant's counsel and indicated, "I do recognize there were mitigating factors; but I believe as I spelled out again at the sentencing hearing that the aggravating factors greatly outweigh the mitigating factors." The court also stated:

"This is not Cook County or some other county where perhaps they don't think this is a big deal. I don't know. It's a really big deal in Livingston County, one of the worst crimes that I have seen in my 13 plus years on the bench. So I think it deserved a maximum sentence given the unique factors and circumstances here coupled with the strong aggravating factors, including [d]efendant's prior record."

The court ultimately denied defendant's motion.

¶ 13    This appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15    On appeal, defendant argues the trial court erred in sentencing him to 30 years' imprisonment, asserting the court relied on improper sentencing factors and failed to consider certain mitigating evidence. Defendant also argues that defense counsel was ineffective for failing to challenge the court's restitution order or, in the alternative, that the court erred by ordering restitution without evidentiary support.

¶ 16                             A. Defendant's Sentence

¶ 17    Defendant first argues the trial court erred in sentencing him to 30 years' imprisonment because, in doing so, the court relied on improper sentencing factors and failed to consider certain mitigating evidence.

¶ 18        1. *The Trial Court Did Not Rely on Improper Sentencing Factors*

¶ 19    Defendant contends the trial court erroneously considered, as aggravating evidence during the sentencing hearing, matters inherent in the offense and improperly based his sentence on matters not in evidence and on its personal experience. Defendant acknowledges he forfeited review of these claims because he did not make a contemporaneous objection and did not raise them in a postsentencing motion. See *People v. Harvey*, 2018 IL 122325, ¶ 15, 115 N.E.3d 172.

Nonetheless, defendant requests we review his claims under the plain error doctrine.

¶ 20 The plain error doctrine allows review of forfeited claims where: (1) "a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error" and (2) "a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Internal quotation marks omitted.) *Id.* "The initial step under either prong of the plain error doctrine is to determine whether the claim presented on review actually amounts to a 'clear or obvious error' at all." *Id.*

¶ 21 "The trial court's sentence must be based upon the particular circumstances of the case, including (1) the defendant's history, character, and rehabilitative potential; (2) the seriousness of the offense; (3) the need to protect society; and (4) the need for punishment and deterrence." *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 102, 126 N.E.3d 703. The Unified Code of Corrections (Unified Code) (730 ILCS 5/5-5-3.1 to 5-5-3.2 (West 2016)) sets forth additional mitigating and aggravating factors the court must consider before issuing its sentence. Generally, "[t]he trial court has broad discretionary powers when selecting an appropriate sentence." (Internal quotation marks omitted.) *Sturgeon*, 2019 IL App (4th) 170035, ¶ 102. However, in selecting a sentence, the court must not consider "improper factors in aggravation." (Internal quotation marks omitted.) *People v. Flores*, 404 Ill. App. 3d 155, 157, 935 N.E.2d 1151, 1154 (2010).

¶ 22 "Whether a trial court considered an improper factor when sentencing a defendant is a question of law, which we review *de novo.*" *People v. Winchester*, 2016 IL App (4th) 140781, ¶ 72, 66 N.E.3d 601. On review, "[t]here is a strong presumption that the trial court based its

sentencing determination on proper legal reasoning, and a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court." *People v. Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 22, 979 N.E.2d 1014. "The defendant bears the burden to affirmatively establish that [his] sentence was based on an improper factor. [Citation.] The appellate court will not reverse a sentence unless it is evident that the trial court relied upon an improper factor." *Sturgeon*, 2019 IL App (4th) 170035, ¶ 103.

¶ 23            Defendant first contends the trial court erroneously considered, as aggravating evidence during the sentencing hearing, matters inherent in the offense for which he was convicted. Specifically, defendant argues the court erred by considering that his actions caused harm to McDugle and Nichols because injury was an element of the home invasion offense for which he was convicted. See 720 ILCS 5/19-6(a)(2) (West 2016). Defendant also argues the court erred by considering that he used force to take property from McDugle and Nichols because that was an element of the armed robbery offense. See *id.* §§ 18-1(a); 18-2(a)(1).

¶ 24            Our supreme court has previously determined that "a factor implicit in the offense for which the defendant has been convicted cannot be used as an aggravating factor in sentencing for that offense." *People v. Phelps*, 211 Ill. 2d 1, 11, 809 N.E.2d 1214, 1220 (2004). "Stated differently, a single factor cannot be used both as an element of an offense and as a basis for imposing a harsher sentence than might otherwise have been imposed." (Internal quotation marks omitted.) *Id.* at 11-12. This "double enhancement" is prohibited based upon the assumption that "in designating the appropriate range of punishment for a criminal offense, the legislature necessarily considered the factors inherent in the offense." *Id.* at 12. However, the rule is not meant to be applied rigidly or to force the sentencing court to ignore factors that are relevant to the imposition of a sentence. *People v. Saldivar*, 113 Ill. 2d 256, 268, 497 N.E.2d 1138, 1142-43

(1986). While a court may not consider the "end result of the defendant's conduct" where that end result is implicit in the offense for which the defendant was convicted, the court may properly consider "the nature and circumstances of the offense, including the nature and extent of each element of the offense as committed by the defendant." *Id.* at 271-72.

¶ 25        Applying these principles here, we find that, in sentencing defendant, the trial court did not improperly consider matters inherent in the offenses. As an initial matter, we note that during the sentencing hearing, the court acknowledged the prohibition against double enhancement. It specifically indicated that "[m]any of the factors the [c]ourt otherwise would consider are inherent in the offense." More importantly, in reviewing the court's statements in their entirety, it is clear its comments regarding the harm defendant caused to McDugle and Nichols and the force he used to take their property went to the "nature and circumstances" of defendant's offense. At no point did the court indicate it was sentencing defendant based upon the "end result" of his actions, *i.e.*, on the mere fact that defendant caused harm to the victims and used force to take their property. Instead, the court properly considered as aggravating evidence the *degree* of the harm defendant caused McDugle and Nichols and the *amount* of force he used to take their property. See *id.* at 269 ("While the classification of a crime determines the sentencing range, the severity of the sentence depends upon the *degree of harm* caused to the victim and as such may be considered as an aggravating factor in determining the exact length of a particular sentence ***." (Emphasis in original.)).

¶ 26        Next, defendant contends the trial court "created its own narrative of what occurred in the [residence], improperly placing a more culpable *mens rea* and intent to kill on [defendant] without any evidentiary support." Defendant argues the court's statements indicating defendant wanted to kill McDugle and Nichols were not supported by any evidence. Defendant

acknowledges that, in his victim impact statement, McDugle indicated he thought the man attacking him was trying to kill him. However, defendant argues this statement was a "nonexistent, unsourced" piece of evidence the court could not properly consider during sentencing because it was only made in McDugle's victim impact statement and was only based on McDugle's own conjecture.

¶ 27        To the extent defendant argues the trial court erred in considering McDugle's victim impact statement as aggravating evidence, we note that "a sentencing judge is given broad discretionary power to consider various sources and types of information so that [she] can make a sentencing determination within the parameters outlined by the legislature." *People v. Williams*, 149 Ill. 2d 467, 490, 599 N.E.2d 913, 924 (1992). "At the sentencing hearing, evidence is admissible if it is relevant and reliable." *People v. Williams*, 2018 IL App (4th) 150759, ¶ 17, 99 N.E.3d 590. Courts of review have previously found statements that exceed the scope of a traditional victim impact statement are nonetheless admissible during sentencing hearings where, as here, the statement was relevant and reliable, was offered during the State's presentation of evidence in aggravation, was also substantially included in the PSI, and was not objected to by the defendant at the time it was made. See *People v. Fields*, 198 Ill. App. 3d 438, 442, 555 N.E.2d 1136, 1139-40 (1990); *People v. Willis*, 184 Ill. App. 3d 1033, 1045-46, 540 N.E.2d 1080, 1088 (1989); *People v. Keyes*, 175 Ill. App. 3d 1013, 1017-18, 530 N.E.2d 708, 711 (1988).

¶ 28        In support of his argument, defendant cites *People v. Whitney*, 297 Ill. App. 3d 965, 969-71, 697 N.E.2d 815, 818-20 (1998), and *People v. Ross*, 303 Ill. App. 3d 966, 984-85, 709 N.E.2d 621, 634-35 (1999). In *Whitney*, the appellate court found the trial court erred when it sentenced the defendant based, in part, on a prior conviction even though the evidence showed the defendant did not have a criminal history. *Whitney*, 297 Ill. App. 3d at 969-71. Similarly, in *Ross*,

the appellate court reversed the defendant's sentence which it found the trial court imposed partly due to its conclusion the defendant's misconduct was motivated by his membership in a different gang than the victim, even though the evidence showed the victim and the defendant were members of the same gang. *Ross*, 303 Ill. App. 3d at 985.

¶ 29 We find *Whitney* and *Ross* inapposite to the present case because, here, the trial court's finding that defendant wanted to kill McDugle and Nichols was not contradicted by the evidence but rather was a reasonable inference from the evidence presented. See *People v. Robinson*, 2015 IL App (1st) 130837, ¶ 92, 35 N.E.3d 1095 ("[A] trial judge is allowed to make reasonable inferences from the evidence when sentencing a defendant."). The aggravating evidence presented by the State and the evidence in the PSI both arguably support an inference that defendant "wanted to kill" McDugle and Nichols. In their statements during defendant's sentencing hearing, McDugle and Nichols reported that as soon as Nichols opened the door, defendant's accomplice "cracked [Nichols] on top of the head with a rock" and then advanced toward McDugle. McDugle reported that defendant stabbed him in the bicep, "tried to choke [him] out," and, while the two were fighting over the knife, was trying to pull the knife towards his neck. These facts were also included in the PSI. Based upon this evidence, the court could infer that defendant wanted to kill McDugle and Nichols.

¶ 30 Finally, defendant argues the trial court erred in sentencing him based upon its personal experience. Defendant takes issue with the court's statement that his crime was "up there with some of the worst [it had] ever seen" and with its statement during the hearing on his motion to reconsider sentence that his was "one of the worst crimes [it had] seen." This argument is without merit. Our supreme court has previously determined the sentencing court, in assessing the evidence presented at a sentencing hearing, may rely upon its own background and experience.

See *People v. Tye*, 141 Ill. 2d 1, 23-24, 565 N.E.2d 931, 942 (1990). Therefore, the court's comments comparing defendant's crimes to others it had seen were not inappropriate.

¶ 31   Because defendant has not established the trial court relied on an improper factor in entering his sentence, he has failed to establish the court made a clear or obvious error. Accordingly, the plain error doctrine does not apply, and defendant's claims are forfeited.

¶ 32   2. *The Trial Court Did Not Fail to Consider Mitigating Evidence*

¶ 33   Defendant next argues his sentence is excessive because the trial court failed to consider certain mitigating evidence. Specifically, defendant contends the court failed to consider that he: (1) was cooperative and fully acknowledged committing the crime, (2) showed significant remorse, (3) had an unstable childhood, (4) had a significant history of mental health issues, and (5) sought assistance and counseling to rehabilitate himself. Defendant also contends the court failed to consider the financial cost of his incarceration.

¶ 34   As indicated above, the Unified Code identifies multiple mitigating factors the trial court must consider when sentencing a defendant. See 730 ILCS 5/5-5-3.1 (West 2016). However, the court is not required to recite each factor or to assign a specific value to the mitigating evidence presented at the sentencing hearing. *People v. Baker*, 241 Ill. App. 3d 495, 499, 608 N.E.2d 1251, 1253 (1993). A reviewing court presumes the sentencing court considered all relevant factors and mitigating evidence presented at the sentencing hearing absent some indication to the contrary and may not substitute its judgment for that of the sentencing court merely because it would have weighed the factors differently. *People v. Wheeler*, 2019 IL App (4th) 160937, ¶ 38, 126 N.E.3d 787; *People v. Hill*, 408 Ill. App. 3d 23, 30, 945 N.E.2d 1246, 1253 (2011).

¶ 35   A sentence that is within the statutory range provided by the legislature is presumed to be proper, and the trial court's sentence will not be disturbed on appeal absent an abuse of

discretion. *Sturgeon*, 2019 IL App (4th) 170035, ¶ 104. The court abuses its discretion in sentencing a defendant where the sentence is "greatly at odds with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense." *Id.*

¶ 36        Here, defendant's 30-year sentence was within the authorized statutory range (see 730 ILCS 5/5-4.5-25 (West 2016)) and is therefore presumed to be proper. Nonetheless, defendant argues the presumption does not apply in the present case because the trial court did not consider any mitigating evidence, as indicated by the court's statement that it "[couldn't] find a mitigating factor." We disagree. At the hearing on defendant's motion to reconsider sentence, the court stated: "I do recognize there were mitigating factors; but I believe as I spelled out again at the sentencing hearing that the aggravating factors greatly outweigh the mitigating factors." This statement by the court is supported by the record which shows, prior to sentencing defendant, the court mentioned defendant's youth, difficult upbringing, remorsefulness, and substance abuse history. The court also noted defendant took responsibility for his conduct by pleading guilty. The record demonstrates the court found all of these mitigating factors were outweighed by the serious harm he caused McDugle and Nichols, especially compared to the harm caused by others struggling with substance abuse problems, by his criminal history, and by the fact that he was on parole when he committed the offense. Although the court may have been inarticulate in stating it "[couldn't] find a mitigating factor[,]" based on our review of the entire record, it does not appear the court failed to consider the mitigating factors, as defendant suggests, but instead found the mitigating factors were significantly outweighed by the aggravating factors. Because the court did not fail to consider the mitigating factors, we find the court did not abuse its discretion in sentencing defendant to 30 years' imprisonment. See *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 123, 49 N.E.3d 470 (providing the presence of mitigating factors does not preclude a maximum sentence).

¶ 37                                B. The Restitution Order

¶ 38        Defendant's final argument on appeal is that defense counsel was ineffective for failing to challenge the restitution order or, in the alternative, that the court erred by ordering restitution without evidentiary support.

¶ 39        "To prevail on a claim of ineffective assistance of counsel, [a] defendant must show both the performance of counsel was deficient and the deficient performance prejudiced him." *People v. Murphy*, 2019 IL App (4th) 170646, ¶ 34, 145 N.E.3d 56. "Specifically, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *People v. Veach*, 2017 IL 120649, ¶ 30, 89 N.E.3d 366. A defendant's failure to show either that his counsel's performance was deficient or that he was prejudiced by his counsel's conduct negates a claim of ineffective assistance of counsel. *People v. Thomas*, 2017 IL App (4th) 150815, ¶ 11, 93 N.E.3d 664. "When a claim of ineffective assistance of counsel was not raised at the trial court, our review is *de novo*." *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 88, 129 N.E.3d 755.

¶ 40        Under the Unified Code (730 ILCS 5/5-5-6 (West 2016)), the trial court is authorized to order a defendant to pay restitution for certain economic losses caused by his criminal conduct. *People v. Birge*, 2021 IL 125644, ¶ 47. Section 5-5-6(b) of the Unified Code provides in relevant part that:

        "In fixing the amount of restitution to be paid in cash, *** the court shall assess the actual out-of-pocket expenses, losses, damages, and injuries suffered by the victim named in the charge and any other victims who may also have suffered out-of-pocket expenses, losses, damages, and injuries proximately caused by the

same criminal conduct of the defendant ***." 730 ILCS 5/5-5-6(b) (West 2016). "According to the statute's plain language, the trial court must evaluate the actual costs incurred by the victim and cannot rely on conjecture or speculation as to the amount to be awarded." *Birge*, 2021 IL 125644, ¶ 48. "To satisfy the requirement, then, the trial court must receive sufficient information to evaluate the accuracy of the victim's restitution claim." *Id.*

¶ 41    In the present case, defendant contends his counsel's representation was deficient because he "fail[ed] to object to the $6,389.80 and $1,028.96 calculations in the restitution orders because no evidence demonstrated the actual costs incurred by Nichols and McDugle." However, these exact amounts are listed in the PSI. We have previously determined that, in the absence of some claim of inaccuracy by the State or by defendant, the trial court may properly rely on the contents of the PSI when assessing the amount of restitution to which a victim is entitled. *People v. Hammons*, 2018 IL App (4th) 160385, ¶ 57, 138 N.E.3d 31; *People v. Powell*, 199 Ill. App. 3d 291, 294-95, 556 N.E.2d 896, 898-99 (1990). Because the court's restitution order reflecting the above amounts was supported by sufficient evidence, and because defendant does not argue the amounts are inaccurate or that defense counsel failed to review or correct the PSI, defense counsel cannot be deemed ineffective for failing to object to the restitution order. See *Hibbler*, 2019 IL App (4th) 160897, ¶ 92.

¶ 42    Even assuming defense counsel's performance was deficient, defendant has not shown that he was prejudiced by the deficiency as required to establish a claim of ineffective assistance of counsel. According to defendant, he was prejudiced by the trial court's imposition of the restitution order because "he was ordered to pay restitution in amounts that were not proven as the actual costs he owed." Defendant does not contend the amount of restitution was incorrect or that the State could not have supported the amounts requested in the PSI. Indeed, defendant makes

no argument that, if defense counsel had objected to the court's restitution order, the amount imposed would have been any different. Accordingly, we find defendant has not established that he was prejudiced by defense counsel's failure to object to the court's restitution order. See *id.* ¶ 93.

¶ 43 Finally, defendant argues the trial court erred by ordering restitution without proof to support the financial obligation. Defendant acknowledges this claim was not preserved below but again requests plain error review. We find the plain error doctrine does not apply because, as indicated above, the court properly relied on the contents of the PSI when determining the amount of restitution to which McDugle and Nichols were entitled. See *Hammons*, 2018 IL App (4th) 160385, ¶ 57; *Powell*, 199 Ill. App. 3d at 294-95. Therefore, defendant's claim is forfeited.

¶ 44                                III. CONCLUSION

¶ 45 For the reasons stated, we affirm the trial court's judgment.

¶ 46 Affirmed.