2022 IL App (2d) 200365-U
No. 2-20-0365
Order filed July 7, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 17-CF-1052 |
| | ) | |
| DOMINIC J. SANDERS, | ) | Honorable |
| | ) | Brian F. Telander, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices McLaren and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not abuse its discretion in sentencing defendant to natural life plus 45 years for first-degree murder, home invasion, and residential burglary.

¶ 2    Defendant, Dominic J. Sanders, appeals his natural-life sentence for first-degree murder (720 ILCS 5/9-1(a)(1) (West 2016) (intent to cause death or great bodily harm)) and his consecutive sentences of 30 years' imprisonment for home invasion (720 ILCS 5/19-6(a)(2) (West 2016) (entry with intent to cause injury)), and 15 years' imprisonment for residential burglary (720 ILCS 5/19-3(a) (West 2016)). He argues that the trial court did not adequately consider his

rehabilitative potential in imposing his sentences. He asks that we reduce his sentences or remand to the trial court for a new sentencing hearing. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    A jury found defendant guilty of first-degree murder, home invasion, and residential burglary. It also found that (1) the first-degree murder manifested exceptionally brutal or heinous behavior indicative of wanton cruelty and (2) defendant murdered the victim in the course of another felony. Either finding would support a sentence of natural-life imprisonment. See 720 ILCS 5/9-1(b)(6) (West 2018); 730 ILCS 5-4.5-20(a), 5-8-1(a)(1)(b) (West 2016).

¶ 5    The victim of the offenses was Andrea Urban, who, on May 4, 2017, was found murdered in her house. There was no evidence of forced entry to the house. On the morning of May 7, neighbors saw defendant walking in the vicinity of Urban's home. He was wearing a reflective yellow vest similar to those worn in construction or utility work. When interviewed by the police in connection with the murder, defendant acknowledged that he wore the vest to make others feel more comfortable around him.

¶ 6    The evidence showed that Urban was killed by repeated blows to her head with a blunt instrument. Among other injuries, there was a "hinge fracture" across the base of her skull. This "basically split the base of the skull in two"; such an injury required great force, such as would occur in a car accident. Urban's throat was slashed on one side exposing the larynx, but, although this injury contributed to her death, it was not the primary cause of her death. Her nose was broken. All her clothing was bloodstained. Her mock turtleneck, sleeveless dress, tank top, and bra were cut on one side to expose her body. Her skirt and leggings were also cut or torn on the right side. Her skirt was pushed up, her leggings were pulled down, and her underpants were ripped off. There

was blood in her underpants and small abrasions at the opening of her vagina. No semen was detected on Urban's body, and no male DNA was detected in vaginal, rectal, and buccal swabs.

¶ 7 The trial evidence suggested that the cuts were inflicted by a knife taken from Urban's kitchen and that the knife was broken during the attack. Further evidence showed that defendant had taken jewelry from Urban and sold it.

¶ 8 At sentencing, the State presented evidence of two incidents while defendant was in pretrial detention. First, on May 28, 2017, defendant called his mother and asked her to destroy physical evidence. Second, on December 24, 2019, defendant and Vshonne Dawkins attacked a fellow inmate, 53-year-old Steven Kelly, and inflicted serious injuries. Jail security cameras captured the attack. Defendant and Dawkins entered Kelly's cell and picked up a bin containing items that Kelly had bought from the commissary. Kelly approached them. Kelly was struck and pushed out of his cell. He fell to the floor. Defendant and Dawkins then kicked and punched him multiple times in the body and face. Kelly suffered a subdural hematoma, multiple rib fractures, and a punctured lung. Defendant told a corrections officer that his conflict with Kelly had begun several days before the beating. Kelly had repeatedly called defendant a racial slur. After reviewing the security video, the trial court characterized the incident with Kelly as "a vicious, unprovoked attack" and noted that defendant was "the main person involved."

¶ 9 Defendant had multiple prior convictions of forgery and identity theft. He had no record of prior violent offenses. Defendant reported a history of alcohol abuse but denied any other substance abuse. He was expelled from high school but later obtained his equivalency certificate.

¶ 10 The court, in imposing sentence, agreed with the jury that Urban's murder was exceptionally brutal and heinous and indicative of wanton cruelty. In the court's words, it was "savagely violent, savagely vicious, utterly wicked, and evil." The court found no mitigating factor

that "in any way remotely applie[d]" to defendant. The court noted that defendant submitted in mitigation many letters attesting to his kindness and nonviolent nature—all of them insisting that he would never commit such an act. The court suggested that these individuals "really d[id]n't know the defendant" and that his true character was shown in the brutal murder of Urban and the similarly brutal beating of Kelly. The court also found that defendant's criminal history, though nonviolent, was "horrendous" and indicated little rehabilitative potential. The court summarized: "Merciless. Malicious. Inhumane. A total lack of compassion. [Defendant], you are all of those things and more, and the public needs to be protected from you forever."

¶ 11    The court imposed a discretionary sentence of natural-life imprisonment for the murder conviction in addition to sentences of 30- and 15-years' imprisonment for home invasion and residential burglary. The court also determined that consecutive sentencing was mandatory because defendant inflicted severe bodily injury to the victim. 730 ILCS 5/5-8-4(d)(1) (West 2018). Defendant did not move for reconsideration but instead filed a timely appeal.

¶ 12                                    II. ANALYSIS

¶ 13    Defendant concedes that, because defense counsel did not file a postsentencing motion, defendant has forfeited any claim of sentencing error. See, *e.g.*, *People v. Harvey*, 2018 IL 122325, ¶ 15 ("In order to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required."). He contends that we can nonetheless reach his claim for either of two reasons: (1) the claimed error was plain error (see *People v. Hillier*, 237 Ill. 2d 539, 545 (2010)) or (2) defense counsel was ineffective for failing to preserve the claim for appeal (see *People v. Enoch*, 122 Ill. 2d 176, 201 (1988)). He asks that we reduce his sentences or remand for a new sentencing hearing.

¶ 14    Even if we bypassed defendant's forfeiture, and reviewed his claim of a sentencing error, we would review it only for an abuse of discretion. See *People v. Miller*, 2014 IL App (2d) 120873, ¶ 35. And even if we undertake that review, we find no basis to disturb defendant's sentence.

¶ 15    The controlling principles are well settled:

"A sentence will be deemed an abuse of discretion where the sentence is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense. [Citations.]

The trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference. [Citations.] A reviewing court gives great deference to the trial court's judgment regarding sentencing because the trial judge, having observed the defendant and the proceedings, has a far better opportunity to consider these factors than the reviewing court, which must rely on the 'cold' record. [Citation.] The trial judge has the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. [Citations.] Consequently, the reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently. [Citation.]" (Internal quotation marks omitted.) *People v. Alexander*, 239 Ill. 2d 205, 212-13 (2010).

¶ 16    Defendant argues that the court abused its discretion in that it did not adequately consider his rehabilitative potential as reflected by his lack of a violent criminal history. He asserts that the murder was "without question a horrible tragedy, but not one that is likely to recur." On the contrary, the viciousness of Urban's murder was seen again in Kelly's beating. Thus, the trial court reasonably found that defendant lacked rehabilitative potential. We note, too, that the vicious and

random targeting of Urban was not a mere lapse in judgment that can be dismissed as a "tragedy." Defendant confessed that he used a construction vest to put his victims at ease and the trial court may consider all relevant evidence at sentencing. *People v. Hudson,* 157 Ill. 2d 401, 449-50 (1993).

¶ 17 Because there was no error, there can be no plain error. See *People v. Herron*, 215 Ill. 2d 167, 178 (2005) (a court cannot consider plain error unless it is "plainly apparent from the record that an error affecting substantial rights was committed" (Internal quotation marks omitted.)). Further, because the sentences were within the court's discretion, defendant cannot establish prejudice from defense counsel's failure to file a motion to reconsider the sentence. See *People v. Jefferson*, 2021 IL App (2d) 190179, ¶ 48. Put differently, defendant has not established a reasonable probability that, had counsel filed the motion, his sentence would have been any different.

¶ 18                                    III. CONCLUSION

¶ 19 In this case, the record overwhelmingly supported the trial court's exercise of its discretion in imposing defendant's sentence. We therefore affirm the judgment of the circuit court of Du Page County.

¶ 20 Affirmed.