NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in the
limited circumstances al-
lowed under Rule 23(e)(1).

2021 IL App (4th) 190283-U

NO. 4-19-0283

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 13, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Adams County |
| CLIFTON ELY, | ) | No. 81CF183 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Robert K. Adrian, |
| | ) | Judge Presiding. |

---

JUSTICE STEIGMANN delivered the judgment of the court.
Presiding Justice Knecht and Justice Holder White concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The appellate court affirmed the trial court's judgment because the trial court appropriately reconsidered and reversed its interlocutory order granting defendant leave to file his successive postconviction petition.

¶ 2   In July 1981, the State charged defendant, Clifton Ely, with two counts of home invasion, two counts of armed robbery, three counts of armed violence, and one count of burglary. The charges alleged that defendant and his codefendant, Carl Griggsby, broke into the home of Givi and Rusudan Gabliani and robbed them. Rusudan also accused defendant of sexually assaulting her, but defendant was never charged with that sexual assault.

¶ 3   In September 1981, defendant pleaded guilty to two counts, armed robbery and armed violence, in exchange for the dismissal of all other counts in this case and the dismissal of an unrelated aggravated battery charge. In October 1981, the trial court sentenced defendant to 60 years in prison for each count, to be served concurrently.

¶ 4    In August 2018, defendant filed *pro se* an amended successive postconviction petition. Defendant argued (1) he "had a constitutional right" to address the Rule 604(d) certificate filed by David Farmer, appointed counsel for a successive postconviction petition defendant filed in 2002, (2) the ruling in *People v. Easton*, 2017 IL App (2d) 141180, provided him an opportunity to attack Farmer's Rule 604(d) certificate, (3) the trial court erred by dismissing defendant's original petition "where a review of the record did support [defendant's] claim of ineffective assistance of counsel" because counsel "never filed a Supreme Court Rule 604(d) certificate," and (4) the new rule in *Easton* "effects the decision in [defendant's] case as the decision in *Easton* is retroactive."

¶ 5    In October 2018, Judge Wellborn recused herself from the case because of a conflict. The case was reassigned to Judge Robert Adrian. In May 2019, the trial court conducted a hearing at which the court said it had reviewed the original order granting defendant leave to file his successive postconviction petition. The court stated it disagreed with the order allowing defendant to file his successive postconviction petition and moreover, dismissed the petition, finding it frivolous and without merit.

¶ 6    Defendant appeals, arguing that (1) Judge Adrian improperly reversed Judge Wellborn's order granting defendant leave to file his successive postconviction petition and (2) the trial court erred when it refused to investigate (a) defendant's request to represent himself and (b) whether defendant had knowingly withdrawn his earlier request to represent himself. We disagree and affirm.

¶ 7                                    I. BACKGROUND

¶ 8                                    A. The Information

¶ 9    In July 1981, the State charged defendant with two counts of home invasion, two

counts of armed robbery, three counts of armed violence, and one count of burglary. The charges alleged that defendant and his codefendant broke into the home of Givi and Rusudan Gabliani and robbed them.

¶ 10                                B. The Guilty Plea

¶ 11        In September 1981, the trial court conducted defendant's plea hearing at which the State provided a factual basis for the pleas which established that defendant and Griggsby forced their way into the Gablianis's home at gunpoint on the evening of June 30, 1981, and proceeded to tie up the Gablianis and loot their residence. In summarizing the testimony that would have been presented, the state's attorney stated that Rusudan would testify that she was sexually assaulted by defendant before he left her residence. The State noted that defendant had not been charged with any crimes related to the sexual assault.

¶ 12        Defendant's attorney objected to the state's attorney referencing an alleged sexual assault because "there is no charge of that nature having been made at any time with reference to the facts we are here about." The trial court overruled defendant's objection. Defendant persisted in his request to change his plea from not guilty to guilty.

¶ 13        Defendant did not negotiate an agreement as to his sentence, and the trial court admonished him that he could receive an extended-term sentence of between 6 and 60 years in prison.

¶ 14        Defendant pleaded guilty to two counts, armed robbery and armed violence, in exchange for the dismissal of all other counts in this case and the dismissal of an unrelated aggravated battery charge.

¶ 15                              C. The Sentencing Hearing

¶ 16        In October 1981, the trial court conducted defendant's sentencing hearing. At the

beginning of the hearing, the court again admonished defendant that he faced an extended-term sentence if the court found that his behavior was brutal and heinous, after which defendant persisted in his guilty plea.

¶ 17 The State attempted to introduce evidence of an uncharged sexual assault that occurred during the robbery to prove the use of force. Defendant objected, arguing that he was never charged with sexually assaulting Rusudan and that evidence of an uncharged sexual assault should not be allowed. The State argued that "for the Court to intelligently sentence here the Court has to view the totality of force applied to the victims by both [defendant] and his co-defendant for whom he is accountable. If that force includes rape, that's force." The court allowed the evidence of a sexual assault.

¶ 18 The presentence investigation report (PSI) contained a summary of the police reports that detailed the police investigation. The PSI relayed the police interview with the Gablianis, including how they were both beaten and robbed by two assailants. "The Gablianis described the men as both being black, males, one being appx. 6 ft. 1 in. tall, muscular, lean ***. The other is smaller in build, appx. 5 ft. 8 in. tall ***."

¶ 19 The PSI contained a further report the police wrote about an interview with the Gablianis three days after the attack in which Rusudan provided more details about how the men attacked and threatened her and her husband. Rusudan explained that the men tied her up and the taller man sexually assaulted her before wiping his penis on Givi's face. Givi also reported that the rapist was the taller man.

¶ 20 Michael Shih, Rusudan's obstetrician and gynecologist, testified that he treated Rusudan for vaginal bleeding that lasted for one week following the attack.

¶ 21 Givi and Rusudan testified about the attack and detailed their injuries. Rusudan

testified that the taller man broke her nose and sexually assaulted her. Deputy Jon McCoy testified that defendant was the taller man.

¶ 22        Griggsby testified in exchange for a four-year sentence. Griggsby testified that he was about 5 feet 8 inches tall. Griggsby said he left defendant alone in the house when Griggsby moved the car. Griggsby denied sexually assaulting Rusudan.

¶ 23        In allocution, defendant admitted to the home invasion but denied sexually assaulting Rusudan.

¶ 24        The trial court found that defendant's use of force throughout his crimes was brutal and heinous, accompanied by wanton cruelty. The court sentenced defendant to 60 years in prison for each count, to be served concurrently.

¶ 25        In November 1981, defendant moved to withdraw his guilty plea. Defendant argued that because he was never charged with sexually assaulting Rusudan, evidence of the uncharged sexual assault was not properly before the trial court at his sentencing. Thus, the evidence could not be used to enhance his sentence. The trial court denied defendant's motion. This court affirmed defendant's conviction on appeal. *People v. Ely*, 107 Ill. App. 3d 102 (1982).

¶ 26                        D. Defendant's Subsequent Filings

¶ 27        In December 1982, defendant filed a motion to reduce his sentence, citing his youth and rehabilitative potential. The trial court dismissed his motion in January 1983.

¶ 28        In August 1991, defendant filed a postconviction petition in which he alleged that testimony regarding an uncharged sexual offense was improperly used against him at sentencing and his attorney provided ineffective assistance of counsel. The trial court summarily dismissed defendant's petition at the first stage, and the appellate court affirmed the trial court's judgment on appeal. *People v. Ely*, 227 Ill. App. 3d 1113 (1992) (table) (unpublished order under Supreme

Court Rule 23).

¶ 29    In April 2002, defendant filed a successive postconviction petition, arguing that the trial court's finding of brutal and heinous use of force at sentencing violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and, again, that the trial court should not have heard evidence related to an uncharged sexual assault at sentencing. The trial court allowed the petition and appointed counsel, David Farmer, who filed an amended petition in September 2002, in which he raised the same two issues.

¶ 30    In November 2002, the State filed what was effectively a motion to dismiss defendant's 2002 successive petition. In January 2003, Farmer filed a document titled "Counsel for Defendant's Rule 604(d) Certificate," which averred that he complied with the requirements of Illinois Supreme Court Rule 604(d) (eff. Nov. 1, 2000). That same day, the trial court conducted a hearing at which it dismissed defendant's petition. Defendant appealed, and the Office of the State Appellate Defender (OSAD) was appointed as counsel for defendant. In January 2005, OSAD moved to withdraw. This court granted the motion and dismissed the appeal. *People v. Ely*, 353 Ill. App. 3d 1113 (2005) (table) (unpublished order under Supreme Court Rule 23).

¶ 31    In December 2009, defendant filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2008)), asserting that he was not informed he was subject to increased penalties until after he entered his plea, that the trial court improperly relied on an uncharged offense when imposing an extended-term sentence, and that he was not admonished about his three-year term of mandatory supervised release. In February 2010, the court dismissed defendant's section 2-1401 petition because the issues defendant raised had been raised in previous pleadings and denied. Defendant appealed, counsel was appointed, counsel moved to withdraw, and this court granted the motion and affirmed the trial court's

judgment. *People v. Ely*, 409 Ill. App. 3d 1184 (2011) (table) (unpublished order under Supreme Court Rule 23).

¶ 32    In June 2013, defendant filed a motion to correct his mittimus *nunc pro tunc*, asserting that the mandatory supervised release statute conflicted with the statute setting the Class X sentencing range. In July 2013, the trial court dismissed the motion.

¶ 33        E. The Postconviction Petition at Issue in This Case

¶ 34    In October 2017 (without seeking leave of the court), defendant filed *pro se* a successive postconviction petition in which he argued (1) the trial court erred by dismissing his "original" 1991 postconviction petition as frivolous where counsel who represented defendant on his motion to withdraw his guilty plea failed to file a certificate pursuant to Rule 604(d), showing ineffective assistance of counsel and (2) the holding in *Easton*, finding Rule 604(d) applied retroactively, effected his case in that the record did not show that transcripts of his plea or sentencing hearings were available for counsel's review at the hearing on the motion to withdraw his plea and vacate his sentence.

¶ 35    The matter was initially assigned to Judge Debra Wellborn, who granted defendant leave to file his successive postconviction petition and appointed counsel for defendant.

¶ 36    In June 2018, the trial court conducted a hearing at which appointed counsel advised the court she and defendant were "not in agreement" as to how to proceed with defendant's successive postconviction petition. Defendant told the court that his 1991 postconviction petition alleged ineffective assistance of counsel based on appointed counsel's failure to file a Rule 604(d) certificate. Defendant alleged that "somebody tried to clean the record up" by filing a Rule 604(d) certificate on January 3, 2003, the date of the hearing at which the court dismissed defendant's first successive postconviction petition. Defendant wished to have the ineffective assistance of

counsel issue he raised in his 1991 postconviction petition included in his successive postconviction petition and addressed by the court.

¶ 37    Defendant's appointed counsel moved to withdraw from the case because she had no meritorious issues with which to amend defendant's successive postconviction petition, and defendant asked for new counsel. The court informed defendant he could either hire private counsel or proceed *pro se*. Following the court's inquiry as to defendant's ability to represent himself, defendant elected to proceed *pro se* and signed a waiver of counsel acknowledgement.

¶ 38    In August 2018, defendant filed *pro se* an amended successive postconviction petition in which he raised two additional issues: (1) whether defendant had a "constitutional right" to address Farmer's Rule 604(d) certificate and (2) whether *Easton* provided defendant the ability to "attack" Farmer's Rule 604(d) certificate. Defendant noted that Farmer may have filed a Rule 604(d) certificate but defendant did not receive a copy of the certificate until June 2018, when his former counsel gave it to defendant for his review. Defendant also denied that he corresponded with Farmer about his contentions of error, and he said he would have raised additional issues.

¶ 39    In October 2018, Judge Wellborn recused herself from the case because her husband was the former state's attorney who responded to defendant's 2002 successive postconviction petition. The case was assigned to Judge Robert Adrian. In October 2018, Judge Adrian reappointed the public defender for defendant without a hearing on the matter.

¶ 40    In May 2019, the trial court conducted a hearing at which the court said that defendant could not speak because he was represented by counsel. The court said it had reviewed the original order granting defendant leave to file a successive postconviction petition and he did not "believe that the judge who entered that order reviewed the case under the right criteria for that." The court reconsidered the request and found that nothing in the successive petition existed

that would allow defendant to file the petition. The court also found that defendant never filed a motion for leave to file his successive postconviction petition, and thus, defendant was "never properly granted leave." Ultimately, the court concluded that the petition was "patently frivolous and without any substance or without any merit" and dismissed the petition.

¶ 41 This appeal followed.

¶ 42 II. ANALYSIS

¶ 43 Defendant appeals, arguing that (1) Judge Adrian improperly reversed Judge Wellborn's order granting defendant leave to file his successive postconviction petition and (2) the trial court erred when it refused to investigate (a) defendant's request to represent himself and (b) whether defendant had knowingly withdrawn his earlier request to represent himself. We disagree and affirm.

¶ 44 A. Judge Adrian Correctly Reversed Judge Wellborn's Order

¶ 45 Defendant argues that Judge Adrian erred when he reversed Judge Wellborn's prior order granting leave for defendant to file a successive postconviction petition because (1) Judge Adrian did not provide defendant sufficient notice or opportunity to be heard, thus depriving defendant of due process, (2) Judge Adrian dismissed the petition despite it having made a *prima facie* showing of cause and prejudice, and (3) defendant's earlier postconviction proceedings were flawed. Defendant also argues that his petition should be remanded and assigned to a new judge, but because we affirm the trial court, we need not address this argument.

¶ 46 1. *The Trial Court Did Not Deprive Defendant of Due Process*

¶ 47 Defendant argues that he was deprived of due process when Judge Adrian did not provide him sufficient notice and opportunity to be heard prior to reversing Judge Wellborn's order granting defendant leave to file his successive postconviction petition.

¶ 48                            a. The Law

¶ 49          "[A] court in a criminal case has the inherent power to reconsider and correct its rulings, and this power extends to interlocutory rulings." *People v. Johnson*, 2017 IL 120310, ¶ 33. A court may review, modify, or vacate an interlocutory order at any time prior to the entry of a final judgment. *Id.*

¶ 50                          b. This Case

¶ 51          We note defendant cites numerous cases which hold that a defendant's due process rights are violated when the trial court grants the State's motion to dismiss, or otherwise dismisses, defendant's petition at the second stage without proper notice or opportunity to be heard. However, that is not the procedural posture of this case.

¶ 52          In this case, Judge Adrian did not dismiss defendant's petition at the second stage but instead reconsidered Judge Wellborn's prior order granting defendant leave to file his successive petition. Defendant does not cite any case that supports the notion that this kind of reconsideration violates defendant's due process rights.

¶ 53          We conclude that pursuant to the court's inherent power to reconsider its own rulings, Judge Adrian was entitled to reconsider and vacate Judge Wellborn's order granting defendant leave to file his successive postconviction petition.

¶ 54          2. *The Trial Court Correctly Dismissed Defendant's Petition Because*

*Defendant Failed to Show Cause and Prejudice*

¶ 55          Of course, just because the trial court *can* reconsider and vacate its own order does not mean that was the correct decision. Defendant argues that the trial court erred by dismissing defendant's successive petition because the petition made a *prima facie* showing of cause and prejudice. We disagree and conclude that the trial court correctly dismissed the petition because it

did not establish cause and prejudice.

¶ 56                                    a. The Law

¶ 57        The Act explains the criteria for obtaining leave to file a successive postconviction petition as follows:

> "Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2016).

¶ 58        The Act contemplates the filing of only one postconviction petition and expressly provides that " '[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived.' " *People v. Bailey*, 2017 IL 121450, ¶ 15 (quoting 725 ILCS 5/122-3 (West 2014)). A defendant not only has the burden to obtain leave of court but also must submit enough in the way of documentation to allow a circuit court to make that determination. *People v. Edwards*, 2012 IL 111711, ¶ 24.

¶ 59        A defendant does not need to "establish cause and prejudice conclusively prior to being granted leave to file a successive petition." *People v. Smith*, 2014 IL 115946, ¶ 29. We note the cause-and-prejudice test presents a higher burden than the frivolous-or-patently-without-merit standard applied at first-stage proceedings. *Id.* ¶ 35. A defendant "must submit enough in the way of documentation to allow a circuit court to make [the cause-and-prejudice] determination."

(Internal quotation marks omitted.) *Id.* ¶ 30. A trial court should deny leave to file a successive postconviction petition "when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *Id.* ¶ 35. "In other words, the court must determine whether defendant has made a *prima facie* showing of cause and prejudice." *Bailey*, 2017 IL 121450, ¶ 24.

¶ 60                                    b. This Case

¶ 61        Defendant's October 2018 *pro se* amended successive postconviction petition argued (1) he "had a constitutional right" to address the Rule 604(d) certificate filed by David Farmer, appointed counsel for a successive postconviction petition defendant filed in 2002, (2) the ruling in *Easton* provided him an opportunity to attack Farmer's Rule 604(d) certificate, (3) the trial court erred by dismissing defendant's original petition "where a review of the record did support [defendant's] claim of ineffective assistance of counsel" because counsel "never filed a Supreme Court Rule 604(d) certificate," and (4) the new rule in *Easton* "effects the decision in [defendant's] case as the decision in *Easton* is retroactive." However, all of defendant's arguments related to the Rule 604(d) certificate are predicated on the assumption that *Easton* applied to defendant's case. Therefore, defendant's argument, in summary, is that (1) the trial court erred by dismissing defendant's 1991 postconviction petition and (2) the appellate court's holding in *Easton* affects the decision in defendant's case.

¶ 62        In response to defendant's first argument, the State asserts that defendant failed to establish a *prima facie* showing of cause and prejudice because "he is essentially requesting this Court to reconsider its prior ruling." We agree. Defendant was not prevented from bringing up this claim earlier—in fact, he did bring it up, this court rejected it, and he now seeks another bite at the

apple. Successive postconviction petitions are for new claims, not for petitioners to fight yesterday's war in perpetuity.

¶ 63      In response to defendant's second argument, the State observes that the Illinois Supreme Court reversed the appellate court's holding in *Easton*, stating, "Therefore, the appellate court erred holding that the amended version of Rule 604(d) applied retroactively to defendant's case on appeal." *People v. Easton*, 2018 IL 122187, ¶ 23. For that reason, defendant's claims based on the appellate court's decision in *Easton* clearly fail as a matter of law.

¶ 64      B. The Trial Court Did Not Err When It Did Not Investigate Defendant's

Request to Represent Himself

¶ 65      Last, defendant argues that the trial court erred because it refused to investigate (1) defendant's request to represent himself and (2) whether defendant had knowingly repudiated his earlier request to represent himself. Because the trial court properly reconsidered the decision granting leave for defendant to file his successive postconviction petition and then dismissed the petition, both of defendant's arguments are moot. "An issue on appeal is moot where it no longer presents an actual controversy." *People v. Harvey*, 2018 IL 122325, ¶ 19. For that reason, we need not consider defendant's arguments. See *id.*

¶ 66      III. CONCLUSION

¶ 67      For the reasons stated, we affirm.

¶ 68      Affirmed.