2019 IL App (1st) 162894

FIRST DISTRICT
SIXTH DIVISION
February 22, 2019

No. 1-16-2894

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 17891 |
| | ) | |
| DALE CONTURSI, | ) | Honorable |
| | ) | James N. Karahalios, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Cunningham concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a 2016 bench trial, defendant Dale Contursi was convicted of aggravated battery and sentenced to eight years' imprisonment with a $25,000 felony fine and various fees. On appeal, he contends that his $25,000 fine is excessive. He also contends that two of his fees were erroneously assessed and he should receive presentencing custody credit against his fine. We vacate the fine and two erroneous fees, remand for the trial court to consider defendant's ability to pay a fine, grant credit against defendant's fine if any, and otherwise affirm.

¶ 2                              I. BACKGROUND

¶ 3    Defendant was charged in relevant part with aggravated battery (720 ILCS 5/12-3.05(a)(1) (West 2014)) for allegedly striking Sanjay Jaisingani about the body on or about September 29, 2015. Various counts alleged that he caused great bodily harm, permanent disability, or permanent disfigurement to Jaisingani.

¶ 4     Defendant was represented in the proceedings below by the public defender. The record does not include a transcript of the court session where counsel was appointed for defendant.

¶ 5     A trial, Sanjay Jaisingani testified that he stopped at a store on his way to work. As he was walking back to his car, he was attacked by defendant when they met on the sidewalk next to the store. He had never seen defendant before that meeting, and he did not recall seeing defendant as he entered the store. As he passed defendant on the narrow sidewalk after exiting the store, "defendant jumped out at me, lunged out at me, threw his arms around me, and shouted something at me" but did not touch him. He was startled and expressed surprise but did not touch defendant. Defendant "used his hands and moved them in my space or in my face" as he stood within a foot of Jaisingani, who pushed defendant's hands away from his face. Defendant accused him of "trying to fight him or hurt him," then took a "fighting posture" and repeatedly but unsuccessfully tried to strike him. Jaisingani backed away from defendant until they were about five feet apart.

¶ 6     Defendant then charged at Jaisingani and pushed him with enough force that "I couldn't resist and I had to also move backwards, run backwards." Jaisingani pushed back but fell to the ground. Defendant was on top of Jaisingani when he punched Jaisingani several times in the face, breaking his nose, then slammed his head several times into the pavement. Jaisingani feared that he would be killed by the latter blows, so he pleaded with defendant to stop attacking him. Instead, defendant retorted that Jaisingani had attacked him and "he wouldn't stand for it," then kicked Jaisingani a few times in the ribs before walking away.

¶ 7     Jaisingani bled profusely. He went into the store to clean up, then went to a hospital, where he was treated. He had a broken nose, bruised ribs, a sprained shoulder, bruising on his

face, and cuts to his nose and forehead. He also had "shooting stars" or vision issues. He received stitches for the cuts and still had a scar on his face at trial. He did not call the police, but an officer met him at the hospital, and he provided a description of his assailant. He later went to the police station to view a photographic array and to be photographed.

¶ 8 A police officer testified to responding to a call of a fight at the store and finding "quite a bit of" blood in the store washroom, and some apparent blood outside the store. Based on a call from the hospital, the officer went there and met Jaisingani, saw his injuries, and received his description of his assailant. The officer then "had an idea of who it may be." A police detective testified to defendant's arrest about a week after the incident and a few blocks from the store.

¶ 9 The court denied defendant's motion for a directed finding as to aggravated battery based on great bodily harm and permanent disfigurement, but found defendant not guilty of aggravated battery based on permanent disability.

¶ 10 Defendant testified that he was sitting on a bench in front of the store when he saw Jaisingani entering the store, looking at defendant "angrily." About 10 minutes later, defendant was standing next to the bench when Jaisingani walked directly towards him, bumped into him, and punched him in the face. Defendant stepped back, and Jaisingani tried to punch him again but defendant blocked him. Defendant then punched Jaisingani once, and he fell to the ground. When Jaisingani got up, he poked defendant in the eye, so defendant punched him twice and fled. Defendant denied sitting on top of Jaisingani, punching him on the ground, or kicking him. He did not report the incident to police because he was defending himself and he saw Jaisingani stand up and walk away.

¶ 11    In rebuttal, the State entered into evidence certified copies of defendant's felony convictions for aggravated battery of a person over 60 years old in 2011 and driving on a suspended or revoked license in 2007.

¶ 12    Following closing arguments, the court found defendant guilty of the remaining two counts of aggravated battery, finding that Jaisingani suffered great bodily harm from his broken nose and permanent disfigurement from his scar. The court found that defendant's account would state self-defense if the court believed it, and that the case came down to credibility as to who was the aggressor. The court found that defendant's account of an unprovoked attack by Jaisingani was not credible. Noting that it observed the demeanors of Jaisingani and defendant, the court found that Jaisingani "does not strike me as someone that would have done" what defendant described. The court also noted the injuries to Jaisingani's ribs.

¶ 13    Defendant's posttrial motion challenged the sufficiency of the trial evidence, and the court denied it without further argument or detailed findings.

¶ 14    The presentencing investigation report (PSI) indicated that defendant was born in 1963 and had several prior convictions, including aggravated battery of a victim over 60 years old in 2011, battery in 2006, resisting a peace officer in 2006, and aggravated battery with a weapon in 2003. He received three years' imprisonment on the 2003 conviction and 42 months' imprisonment on the 2011 conviction. He graduated from high school. He was a union carpenter for the past 33 years, earning $36 per hour and considered a good worker. The PSI stated that he "is incarcerated at the present time and does not have any income." He told the PSI preparer that he resided in "his condominium" for 10 years and would return there upon release from custody.

¶ 15    The court held a sentencing hearing on October 3, 2016. The defense made corrections to the PSI but not regarding the information above. The court said that it reviewed the PSI. The State argued that defendant had a history of violent offenses and was eligible for an extended prison term of up to 10 years. The defense argued that defendant testified to being attacked by Jaisingani and that defendant's criminal record was not as continuous as the State argued. The defense also argued that defendant was a high-school graduate and union carpenter who lived in the same home for over 10 years. "So he does he have stability and he is providing for his own income and for his own sustenance." Defendant addressed the court, maintaining that Jaisingani attacked him and he merely defended himself.

¶ 16    The court found that Jaisingani suffered an unprovoked and "savage beating" from defendant. The court found that defendant's criminal history demonstrated a "very violent, aggressive nature" and that his prior sentences "did virtually nothing to deter him from the commission of offenses." The court sentenced him to eight years' imprisonment with a $25,000 felony fine and various fees. Regarding the fine, the court found:

> "[D]efendant is represented by the Public Defender. The defendant was gainfully employed as a union carpenter at $36 an hour and lives in his own condominium. How and why he ended up with the Public Defender is another issue. But the defendant certainly was not entitled to a free attorney. Certainly was not entitled to a free attorney in this case. And I am fining him the $25,000. The State or the clerk or whoever can seek to execute that as far as the condominium or anything else is concerned."

The court awarded 365 days of presentencing custody credit against his prison sentence, and the order assessing fines and fees reflects that number of days but no monetary credit. The court also ordered him to provide a blood sample for DNA analysis.

¶ 17    Defendant's postsentencing motion challenged his prison sentence but not his fine or fees. In denying the motion, the court found that defendant's offense was "horrendous" and his "criminal record is compatible with the facts" so that his sentence was "richly deserved."

¶ 18                                   II. ANALYSIS

¶ 19    On appeal, defendant primarily contends that his $25,000 felony offense fine is excessive because the trial court did not adequately consider his ability to pay and the fine is disproportionate to his offense.

¶ 20    Defendant admits that by not challenging his fine in the trial court, he forfeited this claim, but argues that we may consider it as a matter of plain error. Generally, a sentencing claim not raised in an objection and in a postsentencing motion is forfeited. *People v. Harvey*, 2018 IL 122325, ¶ 15. "[F]orfeiture rules exist to encourage defendants to raise issues in the trial court, thereby ensuring both that the trial court has an opportunity to correct any errors prior to appeal and that the defendant does not obtain a reversal through his or her own inaction." *People v. Denson*, 2014 IL 116231, ¶ 13. Nonetheless, we may address a forfeited claim under the plain-error doctrine when a clear or obvious error occurred and either (1) the evidence was so closely balanced that the error alone threatened to tip the scales of justice against the defendant, or (2) the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. *Harvey*, 2018 IL 122325, ¶ 15. In applying the plain-error doctrine, we first determine whether error occurred at all. *Id.*

¶ 21    Similarly, defendant argues that trial counsel rendered ineffective assistance by not challenging his fine. Claims of ineffective assistance are judged under the familiar two-prong standard whereby a defendant must show (1) counsel's performance fell below an objective standard of reasonableness and (2) a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *People v. Dupree*, 2018 IL 122307, ¶ 44.

¶ 22    In all felony cases, the trial court may sentence a defendant to pay a fine of up to $25,000 per offense, in addition to any sentence of conditional discharge, probation, or imprisonment. 730 ILCS 5/5-4.5-50(b) (West 2014). "In determining the amount and method of payment of a fine, *** the court shall consider *** the financial resources and future ability of the offender to pay the fine ***." *Id.* § 5-9-1(d)(1). "A 'fine' is 'part of the punishment for a conviction.' " *People v. Smith*, 2018 IL App (1st) 151402, ¶ 13 (quoting *People v. Jones*, 223 Ill. 2d 569, 582 (2006)).

¶ 23    A sentence within statutory limits is reviewed for abuse of discretion, and we may alter a sentence only when it varies greatly from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *People v. Jones*, 2018 IL App (1st) 151307, ¶ 72 (citing *People v. Snyder*, 2011 IL 111382, ¶ 36, and *People v. Alexander*, 239 Ill. 2d 205, 212-13 (2010)). The trial court has broad discretion, so we cannot substitute our judgment merely because we would weigh the sentencing factors differently. *Id.* The trial court is accorded such deference because it has a superior opportunity to evaluate and weigh a defendant's credibility, demeanor, character, age, mental capacity, social environment, and habits. *Id.*

¶ 24    The trial court must consider both the seriousness of the offense and the defendant's rehabilitative potential. Ill. Const. 1970, art. I, § 11; *People v. Sandifer*, 2017 IL App (1st)

142740, ¶ 81. While the court may not disregard mitigating evidence, it determines the weight of such evidence. *People v. Brown*, 2017 IL App (1st) 142877, ¶ 63. The most important sentencing factor is the seriousness of the offense, and the court need not give greater weight to rehabilitation or mitigating factors than to the severity of the offense. *Sandifer*, 2017 IL App (1st) 142740, ¶ 82. We presume the court considered all mitigating factors on the record absent an affirmative indication to the contrary. *Id.*

¶ 25    As a threshold matter, we shall first address defendant's argument that his $25,000 fine was disproportionate to his offense. We find that his fine is not inherently disproportionate or excessive. Defendant notes that he "was convicted of aggravated battery, not murder." However, the maximum fine applies to "all felonies" and may be assessed in cases where the defendant receives conditional discharge. 730 ILCS 5/5-4.5-50(b) (West 2014). Our legislature is well aware that it can enact graduated penalties for offenses according to their statutory class and other factors. See, *e.g.*, *id.* §§ 5-4.5-20(a), 5-4.5-40(a) (prison sentences of 20 to 60 years for first degree murder, 2 to 5 years for a Class 3 felony, and 5 to 10 years for an extended-term Class 3 felony). It has chosen not to do so for the felony offense fine. Defendant similarly argues that "[j]ust as it would have been excessive to sentence [him] to the maximum term of years, it was also excessive to assess the maximum $25,000 felony offense fine against him." However, the premise of that argument is incorrect. It is axiomatic that, because the most important sentencing factor is the seriousness of the offense, the presence of mitigating factors does not require a minimum sentence or preclude a maximum sentence. *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 123. The fact that the court chose not to impose a 10-year prison sentence here does not mean that the imposition of a maximum sentence under these circumstances would have been

excessive. In sum, we see no reason to set aside our usual considerable deference, in reviewing a sentence within statutory limits as this fine is, to the trial court's weighing of the severity of the offense and other sentencing factors.

¶ 26    However, as defendant correctly notes, fines are subject to an additional consideration: the statutory requirement that "the court shall consider *** the financial resources and future ability of the offender to pay the fine." 730 ILCS 5/5-9-1(d)(1) (West 2014). Defense counsel argued at sentencing, based on information in the PSI that came at least partially from defendant and was not objected to by the defense, that defendant was a union carpenter paid $36 hourly who lived in "his condominium" for 10 years. Counsel was attempting to persuade the court that defendant was stable in employment and residence for purposes of mitigating his sentence. The court thus did not make an unsupported leap when it concluded that defendant was stable in employment and residence and thus had some ability at the time of sentencing to pay a significant fine for his significant offense. Had defendant challenged the imposition of this fine in the trial court, the court would have had the "opportunity to correct any errors prior to appeal." *Denson*, 2014 IL 116231, ¶ 13. Counsel did not do so, and we find ourselves reviewing the decision the trial court made from the evidence it had.

¶ 27    Stated another way, we find that the court clearly gave *some* consideration to defendant's ability to pay a fine when it referred to his employment as a union carpenter and his dwelling in a condominium. The question before us is whether that consideration was adequate and proper. Our supreme court and this court have addressed that issue before.

¶ 28    In *People v. Maldonado*, 109 Ill. 2d 319, 324 (1985), our supreme court held that "what is required [by section 5-9-1(d)(1)] is that the record show that the court considered the financial

resources and future ability of the offender to pay the fine." The *Maldonado* court found that the court's remark at sentencing " 'that the defendant had been gainfully employed, and *** he's been on unemployment' " was sufficient indication that it considered the defendant's ability to pay. *Id.* at 324-25. *Maldonado* concerned $500 in fines and a 270-day aggregate jail sentence. *Id.* at 320.

¶ 29    In *People v. Bishop*, 354 Ill. App. 3d 549, 563 (2004), this court held that the trial court "need not specifically state that a defendant was determined to have the financial resources and ability to pay because such finding is implicit in the imposition of a fine where the judge is aware of the facts that support such a determination" from documentation in the record. We found sufficient consideration of ability to pay from a document in the record showing that the defendant "was employed full time as a laborer." *Id. Bishop* concerned a $555 fine and 18 months' supervision. *Id.* at 554.

¶ 30    In *People v. Williams*, 256 Ill. App. 3d 370, 372, 373 (1993), we found adequate consideration of ability to pay where the court stated that it considered the defendant's financial situation, the PSI "indicated that defendant was able to meet his financial obligations and earned approximately $1,800 per month," and the "[d]efendant testified that he had been employed at the same job for five years." *Williams* involved an indigent defendant represented by the public defender who received a $3000 fine and three years of probation. *Id.* at 371, 373.

¶ 31    In *People v. Johnston*, 160 Ill. App. 3d 536, 544 (1987), we found an insufficient consideration of ability to pay where a defendant's affidavit of assets and liabilities indicated that he was unemployed and had no source of income, he was tried *in absentia*, no PSI was prepared, and the trial "court made no inquiry whatsoever with respect to the defendant's financial status."

"Consequently, we find it necessary to vacate the fine and remand the cause for the limited purpose of conducting a hearing to determine the defendant's ability to pay the fine and the amount thereof." *Id.*

¶ 32    These cases support a conclusion that, *in general*, an adequate consideration of ability to pay may be established by the trial court's discussion of a defendant's employment situation, or by the imposition of a fine when documents in the record establish the defendant's employment or financial situation. However, section 5-9-1(d)(1) and *Maldonado* clearly provide that a court imposing a fine must consider a defendant's future ability to pay. The fines and other sentences in the aforesaid cases did not raise concerns about future ability to pay to nearly the degree that the combination of the maximum $25,000 fine and a significant prison sentence does here. The court's determination that defendant had a union job and lived in a condominium for several years before his offense did not adequately address his future ability to pay such a large fine after his eight-year prison sentence. We therefore vacate the fine and remand for the court to adequately assess defendant's ability to pay including his future ability to pay.

¶ 33    Defendant also contends that two of his fees must be vacated and that presentencing custody credit must be applied to his fine. The State agrees that two of defendant's fees are erroneous but does not address the credit claim, either to agree with or oppose it. Defendant acknowledges not raising these claims in the trial court, and the State does not argue that he has forfeited them. The State has thereby forfeited the forfeiture issue and we will consider these claims. See *Smith*, 2018 IL App (1st) 151402, ¶ 7.

¶ 34    The parties are correct that defendant's $250 DNA analysis fee and $5 electronic citation fee must be vacated. The electronic citation fee applies only in traffic, misdemeanor, ordinance

and conservation cases, but defendant was convicted of the felony of aggravated battery. 705 ILCS 105/27.3e (West 2014). A defendant already in the DNA database cannot be ordered to pay another DNA fee. *Harvey*, 2018 IL 122325, ¶ 20. The appendix to defendant's brief includes an Illinois State Police document indicating that he gave a blood sample for DNA testing in 2003 pursuant to his 2003 aggravated battery conviction. The State does not challenge the document, and we take judicial notice of it as a public record. See *People v. Carter*, 2016 IL App (3d) 140196, ¶ 59.

¶ 35     Defendant's 365 days of presentencing custody entitle him to up to $1825 credit against his fine, if any, at the statutory $5 per day. See 725 ILCS 5/110-14(a) (West 2014). We so order.

¶ 36                                    III. CONCLUSION

¶ 37     Accordingly, we vacate defendant's $25,000 fine and remand for the trial court to conduct a hearing to determine defendant's ability to pay and, if that ability is established, the amount of his fine. We also vacate the $250 DNA analysis fee and $5 electronic citation fee. We direct the clerk of the circuit court to reflect up to $1825 in credit against defendant's fine, if any. The judgment of the circuit court is otherwise affirmed.

¶ 38     Affirmed in part, vacated in part, and remanded.