2024 IL App (1st) 230469-U

No. 1-23-0469

Order filed September 24, 2024

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 00917 |
| | ) | |
| JOHN ORTEGA, | ) | Honorable |
| | ) | Angela M. Petrone, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE VAN TINE delivered the judgment of the court.
Justices Howse and Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the trial court's post-*Krankel* hearing denial of defendant's amended motion seeking a new trial and resentencing over defendant's contention that trial counsel rendered ineffective assistance by not investigating and presenting certain witnesses at sentencing.

¶ 2    Following a bench trial, the trial court found defendant John Ortega guilty of first-degree murder and sentenced him to 38 years in prison. On direct appeal, we affirmed defendant's conviction but remanded for inquiry into his postsentencing claim of ineffective assistance of trial

counsel, as required by *People v. Krankel*, 102 Ill. 2d 181 (1984). See *People v. Ortega*, 2017 IL App (1st) 143424-U, ¶ 2. Defendant now appeals the trial court's ruling at the *Krankel* hearing that he did not establish that trial counsel rendered ineffective assistance by failing to investigate and present certain witnesses at sentencing.[1] For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      The State charged defendant with two counts of first-degree murder (720 ILCS 5/9-1(a)(1), (2) (West 2010)), one count of attempt murder (*id.* §§ 8-4(a), 9-1(a)(1)), two counts of leaving the scene of a motor vehicle crash involving death (625 ILCS 5/11-401(a), (b) (West 2010)), and one count of possession of a stolen motor vehicle (*id.* § 4-103(a)(1)). The charges arose from a January 27, 2011, incident in which defendant intentionally struck Rene Torres with a vehicle, killing him.

¶ 5                              A. Trial and Direct Appeal

¶ 6      At trial, private counsel represented defendant. The evidence established that a blue Nissan Maxima belonging to Ramon Rodriguez Lopez and Cynthia Perez Espinoza was stolen in Chicago at approximately 7 p.m. on January 27, 2011. Approximately an hour later, Rene Torres and Vicente Martinez, who were members of the Two-Six street gang, were walking near the intersection of West 25th Street and South Karlov Avenue in Chicago. Martinez noticed a blue vehicle in a nearby parking lot and saw its front passenger brandishing a firearm through the window. The vehicle then drove toward Torres and Martinez. The vehicle struck Torres and stopped on top of him; it either nicked or narrowly missed hitting Martinez. Martinez saw the

_____

[1]On remand, defendant filed an amended motion for a new trial, raising claims of ineffective assistance of trial counsel for failure to present alibi witnesses at trial and failure to present mitigation witnesses at sentencing. This appeal concerns only the sentencing issue, but defendant's briefs inconsistently request both resentencing and a new trial. Resentencing is the only available remedy. See *People v. Billups*, 2016 IL App (1st) 134006, ¶¶ 14-18.

driver, whom he identified as defendant, and a passenger exit the vehicle and run away. Surveillance video, which the State presented at trial, recorded these events. Martinez called 911 and tried to lift the vehicle off Torres. Torres died at the scene due to compressional asphyxia.

¶ 7    Martinez testified that he believed the individuals in the blue vehicle were members of the Latin Kings gang because there was a feud between that gang and the Two-Six gang at the time. He provided descriptions of the driver and passenger to police. In the summer of 2011, police matched fingerprints from a soda bottle found inside the vehicle and from the vehicle's rear driver-side exterior window frame to defendant. On November 29, 2011, Martinez identified defendant as the driver in a photo array. Police arrested defendant on December 5, 2011. He was 17 years old at the time. Martinez identified defendant in a lineup. Approximately three years after defendant's arrest, police discovered that DNA from a black knit cap found in the vehicle matched a man named Raoul Molina. Martinez identified Molina as the passenger in a photo array.

¶ 8    The court found defendant guilty of one count of first-degree murder and acquitted him of the remaining counts.

¶ 9    Trial counsel also represented defendant at sentencing. At the sentencing hearing, the court indicated it had reviewed defendant's presentence investigation report (PSI). The PSI stated that defendant grew up in Chicago with his parents and siblings, had a good childhood, and was close to his family. Defendant became affiliated with the Latin Kings when he was 13 years old. He graduated from high school in 2011 and worked a part-time summer job with an organization called Cease Fire in Chicago. In March 2011—after Torres's murder but before defendant's arrest for it—defendant was adjudicated delinquent for aggravated battery of a police officer and was sentenced to a year of probation, which was terminated unsatisfactorily. In April 2012, defendant

was adjudicated delinquent for aggravated battery causing great bodily harm and was sentenced to one year and five months in prison.

¶ 10    In aggravation, the State presented a victim impact statement from Torres's sister, who described the impact Torres's death had on his family. In mitigation, trial counsel presented a letter from defendant's sister describing his good relationship with his family. Trial counsel also proffered that defendant participated in a life skills workshop from March to December 2011, again, after Torres's murder but before defendant's arrest for it.

¶ 11    The State argued that Torres suffered a "horrific death" and that defendant's two adjudications for aggravated battery showed he was a violent person. The State requested the maximum 60-year sentence. Defendant contended that he grew up surrounded by gang violence and that this murder was part of a "back and forth" series of murders between the Latin Kings and the Two-Sixes gangs. Defendant claimed that he was "growing out of [gang life] and putting it behind him." He requested the minimum sentence of 20 years.

¶ 12    In allocution, defendant expressed sympathy for Torres's family but denied he killed Torres and denied he was "near the crime scene during that day." He also claimed he "had an alibi but [his] attorney never looked into it." Trial counsel stated he investigated defendant's potential alibi but was unable to find witnesses to support it.

¶ 13    The court sentenced defendant to 38 years in prison. The court explained that Torres's death was "the greatest [aggravating factor there] could be" and highlighted defendant's juvenile background and gang membership as further aggravation. The court found that, given defendant's stable and comfortable home life, there was "no explaining the path that [he] took that was outside

of the law." The court acknowledged as mitigating factors defendant's young age, completion of high school, respectful and helpful demeanor, and potential for rehabilitation.

¶ 14    Trial counsel filed a motion to reconsider sentence, which the trial court denied. The same day, defendant filed a *pro se* motion for reduction of sentence, in which he argued as follows:

> "I am innocent of this crime. I am not a hazard to society. There are many law-abiding citizens and community leaders who can advocate for me that I am a good individual and an asset to society. I was treated misfairly [*sic*] by my representation and he created a bias for me to the judge and I feel the judge is going off his false accusations. I do not deserve this sentence or to be in the penitentiary."

Defendant's *pro se* motion identified as "advocates" Art Guerrero, "Matt Buller," Hector Escalara, and "Ben E."[2] The trial court denied defendant's *pro se* motion as frivolous and untimely.

¶ 15    On direct appeal, defendant argued that (1) the State failed to prove him guilty beyond a reasonable doubt, (2) the trial court failed to accurately recall the evidence, (3) the trial court failed to inquire into defendant's postsentencing complaint regarding his counsel, and (4) his case should be remanded for resentencing under provisions that were, at the time, newly applicable to defendants under the age of 18. *Ortega*, 2017 IL App (1st) 143424-U, ¶ 2. This court affirmed defendant's conviction but remanded for a *Krankel* inquiry regarding defendant's postsentencing complaint of ineffective assistance of counsel. *Id.*

¶ 16                              B. *Krankel* Hearing

---

[2]"Buller" appears to be a misspelling of Matt Buehler's last name and "Ben E." appears to refer to Benny Estrada.

¶ 17    On remand, defendant was appointed an assistant public defender, who filed an amended motion for a new trial. Defendant argued, in relevant part, that trial counsel rendered ineffective assistance by failing to investigate and call mitigation witnesses at sentencing.[3] Defendant attached his own affidavit, in which he attested to telling trial counsel that Art Guerrero, Hector Escalara, and Benny Estrada could testify on his behalf at the sentencing hearing. Defendant did not believe that trial counsel contacted any of those witnesses.

¶ 18    Guerrero's affidavit was attached to the amended motion as well. Guerrero attested that he was a program director at Urban Life Skills (ULS) and met defendant in 2010 when the juvenile court required defendant to attend that program. Defendant was an enthusiastic and well-liked participant in the program. He was "very open about being in a gang [and] stated on several occasions that he wished he never joined [the gang] and that he was working on getting out." Defendant also obtained his high school diploma through an alternative school called Latino Youth. Guerrero did not recall being contacted by trial counsel but would have testified consistent with his affidavit at the sentencing hearing.

¶ 19    Vincent Torres's affidavit attested that he was a mentor with ULS, an organization that provides services to individuals on juvenile probation. Torres worked with defendant through ULS in 2011 or 2012. Defendant earned a high school diploma during that time and Torres found him to be "a very bright individual who had some rough experiences in life." Torres and defendant "had numerous discussions about gang life and the changes he would need to make to succeed in

___

[3]As noted above, defendant's amended motion for a new trial also claimed that trial counsel was ineffective for failing to call alibi witness Imani Williams, who would have testified that defendant was stealing a car in Berwyn at the time of Torres's murder in Chicago. On appeal, defendant has abandoned that theory of ineffective assistance, so we do not discuss defendant's witnesses and arguments regarding his potential alibi.

life." Defendant's progress in ULS was "steady and encouraging" and Torres believed defendant could become a productive citizen. Trial counsel did not contact Torres, but he would have testified consistent with his affidavit at the sentencing hearing.

¶ 20 Defendant also attached a letter from ULS director Matt Buehler. Buehler wrote that defendant participated in ULS from March 2011 through December 2011. Defendant attended substance abuse classes, life skills workshops, and gang intervention and youth employment programs. Buehler added that defendant completed 30 hours of community service and was "a pleasure to have as part of [the] program."

¶ 21 At the *Krankel* hearing, the court asked defendant to explain how trial counsel's representation was deficient. Defendant responded that, at sentencing, trial counsel failed to call Guerrero, Buehler, Escalara, and Estrada.

¶ 22 Defendant testified that he met Guerrero, Buehler, Escalara, and Estrada through a program that the juvenile court required him to participate in as part of his sentence in a prior case. He told trial counsel that Guerrero, Buehler, Escalara, and Estrada could provide information for sentencing, but counsel did not present testimony from any of those individuals.

¶ 23 Guerrero testified that he was ULS's program coordinator from 2007 to 2015. ULS worked with individuals on juvenile probation in the Little Village neighborhood of Chicago. Defendant was a participant in the program for approximately a year in 2011 as a mandatory condition of his juvenile probation. Guerrero saw defendant four to five times a week; defendant was "very involved in programming" and exhibited leadership by "encouraging the other kids to participate in the programming." Defendant was a gang member when he entered the program but "seemed like he didn't really want to *** live that kind of lifestyle." Defendant obtained a high school

diploma through the Latino Youth Alternative School and was eligible for a college scholarship but did not receive it because of his arrest in this case. Defendant's mother told Guerrero that defendant's attorney would contact him regarding this case but that never happened. Guerrero was willing to testify on defendant's behalf and would have testified as outlined above.

¶ 24    Trial counsel testified that, in preparing for defendant's sentencing hearing, he became aware of a gang intervention juvenile program that defendant had participated in and may have "contacted somebody at that program," but had no independent memory of doing so. Counsel did not recall if he presented any documents regarding defendant's participation in the juvenile program as part of the mitigation arguments. Counsel would have investigated any witnesses defendant suggested but did not recall any such discussions with defendant. Counsel acknowledged that he did not present Matt Buehler's letter at the sentencing hearing.

¶ 25    The trial court found that trial counsel's performance was not objectively unreasonable and did not prejudice defendant. Specifically, the court found that trial counsel's decision not to present defendant's ULS mentors at sentencing did not constitute ineffective assistance because there was "no reasonable probability the sentence defendant received would have been less" had they testified. The court noted that defendant "chose to commit the brutal murder in this case" despite having "wonderful mentors like Guerrero, Torres, and Buehler," a fact that "would not necessarily have been considered mitigating."

¶ 26    Defendant timely appealed.

¶ 27                                II. ANALYSIS

¶ 28    Defendant argues that, at the *Krankel* hearing, he established that trial counsel rendered ineffective assistance by failing to (1) investigate Guerrero and (2) present Buehler's letter at the sentencing hearing.

¶ 29    When a criminal defendant makes a *pro se* posttrial claim of ineffective assistance of counsel, that triggers a procedure that has developed from our supreme court's decision in *Krankel*. *People v. Jackson*, 2020 IL 124112, ¶ 96. Under that procedure, the trial court must decide whether new counsel is necessary to present the defendant's claim of ineffective assistance of trial counsel. *In re Jonathan T.*, 2022 IL 127222, ¶ 23. First, the trial court must examine the factual basis of the defendant's claim of ineffective assistance. *Jackson*, 2020 IL 124112, ¶ 97. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, the court may deny the *pro se* claim of ineffective assistance without appointing new counsel. *Id.* However, if the defendant's allegations show possible neglect by trial counsel, then the court should appoint new counsel. *Id.* New counsel then represents the defendant at a hearing on the claim of ineffective assistance of trial counsel. *Id.*

¶ 30    The parties disagree about which standard of review applies to an appeal from a *Krankel* evidentiary hearing. Defendant maintains that we review for manifest error. The State contends that we should apply a mixed standard of review, deferring to the trial court's findings of fact unless they are against the manifest weight of the evidence but reviewing *de novo* whether trial counsel rendered ineffective assistance. The State cites *People v. Velasco*, 2018 IL App (1st) 161683, in support of the mixed standard of review. However, more recent authority from our supreme court makes clear that "if the trial court has properly conducted a *Krankel* inquiry and has reached a determination on the merits of the defendant's *Krankel* motion, we will reverse only if

the trial court's action was manifestly erroneous." *Jackson*, 2020 IL 124112, ¶ 98. In this case, the trial court properly conducted a *Krankel* inquiry and resolved defendant's motion on the merits, so manifest error review applies. Manifest error is error that is clearly evident, plain, and indisputable. *Id.*

¶ 31 Defendant raises two claims of ineffective assistance of counsel related to sentencing: (1) trial counsel's failure to investigate Guerrero as a potential witness to defendant's good character, and (2) failure to present Buehler's letter as mitigation evidence. To establish ineffective assistance of counsel, a defendant must show that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *People v. Albanese*, 104 Ill. 2d 504, 526 (1984). To establish deficient performance, defendant must identify errors "so serious that counsel was not functioning as the 'counsel' guaranteed" by the constitution. *Strickland*, 466 U.S. at 687. To establish prejudice, " '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *People v. Hale*, 2013 IL 113140, ¶ 18 (quoting *Strickland*, 466 U.S. at 694). In the context of sentencing, prejudice means a reasonable probability that the trial court would have imposed a lesser sentence. *People v. Billups*, 2016 IL App (1st) 134006, ¶ 16 (citing *People v. Steidl*, 177 Ill. 2d 239, 257 (1997)). We must assess prejudice in a realistic manner based on the totality of the evidence in aggravation and mitigation. *People v. Simon*, 2014 IL App (1st) 130567, ¶ 72.

¶ 32 Because this appeal concerns how trial counsel's decision not to present certain evidence affected defendant's sentence, we review the factors that courts consider when determining a

sentence. A sentencing court must consider both the seriousness of the offense and the defendant's rehabilitative potential. Ill. Const. 1970, art. 1, § 11; *People v. Perruquet*, 68 Ill. 2d 149, 154-55 (1977). However, the seriousness of the offense is the most important sentencing factor. *People v. Contursi*, 2019 IL App (1st) 162894, ¶ 24. The presence of mitigating factors does not require a minimum sentence or preclude a maximum sentence (*People v. Harmon*, 2015 IL App (1st) 122345, ¶ 123), and the court is not required to assign a value to each factor in aggravation or mitigation (*People v. Jones*, 2019 IL App (1st) 170478, ¶ 55).

¶ 33     We hold that the trial court did not commit manifest error by ruling that that defendant failed to establish the prejudice prong of *Strickland* at the *Krankel* hearing. The court sentenced defendant to 38 years in prison, which is "squarely in the middle of the 20-to-60-year sentencing range for first degree murder." See *People v. Ealy*, 2019 IL App (1st) 161575, ¶ 55; see also 730 ILCS 5/5-4.5-20(a) (West 2010)). The most serious aggravating factor was Torres's horrific death: being crushed by the stolen vehicle that defendant used to commit a cold-blooded, gang-related murder. Guerrero's testimony and Buehler's letter addressed only defendant's actions after murdering Torres. They would not have changed the seriousness of this crime or lessened defendant's culpability for it.

¶ 34     Moreover, we are skeptical that Guerrero and Buehler's evidence was, in fact, mitigating. Guerrero and Buehler interacted with defendant between Torres's murder in January 2011 and defendant's arrest for that murder in December 2011. Neither witness claimed that defendant expressed remorse for Torres's murder during that time or considered turning himself in. Guerrero and Buehler also supported an inference that defendant's participation in the ULS program was insincere. Defendant talked with ULS staff about making positive changes and leaving gang life

behind just months after committing a brutal gang-related murder. In addition, Guerrero and Buehler would have revealed that defendant did not participate in ULS by choice, but rather by court order in one of his juvenile delinquency cases. To the extent Guerrero and Buehler would have provided mitigating evidence, it merely would have added detail to what the trial court already knew about defendant, not new information. The court was aware from trial counsel's proffer and defendant's sister's letter that defendant participated in a life skills program from March to December 2011.

¶ 35    At most, despite the trial court's pronouncement to the contrary, there is a remote possibility that Guerrero and Buehler's evidence might have resulted in a marginally lower sentence, although we cannot say how much lower. A speculative, undefined possibility that the sentence may have been lower is not sufficient to establish prejudice under *Strickland*, which requires "a *reasonable probability* the court *would* have imposed a lower sentence" had counsel presented the mitigating evidence at issue. (Emphasis added.) See *People v. Gates*, 2023 IL App (1st) 211422, ¶ 69.

¶ 36    Defendant cites *Glover v. United States*, 531 U.S. 198 (2001), for the proposition that "any extra prison time is prejudicial." *Glover* holds that any identifiable *increase* in a defendant's sentence establishes prejudice. *Id.* at 198. However, *Glover* does not hold that a defendant not receiving every imaginable *decrease* in his sentence also establishes prejudice. Furthermore, the facts of *Glover* are distinguishable. The defendant in *Glover* established prejudice by showing that the class of his offense was mistakenly increased by two classes, resulting in a sentence 6 to 21 months longer than the sentence he should have received. *Id.* at 200. In this case, defendant raises no such claim. Rather, he makes only a speculative claim that Guerrero and Buehler's evidence

might have resulted in a slightly shorter sentence. *Glover* does not hold that such speculation is sufficient to show prejudice under *Strickland*. In addition, *Glover* involved counsel's failure to object to an erroneous sentencing calculation, not counsel's strategic decisions about what mitigating evidence to present.[4] *Id.* at 204.

¶ 37 Defendant also relies on *People v. Cuevas*, 2018 IL App (2d) 151100. In *Cuevas*, defense counsel presented no mitigating evidence at sentencing. *Id.* ¶ 10. The trial court found that the defendant had "very little rehabilitative potential" and sentenced him to 14 years in prison for possession of a controlled substance with intent to deliver. *Id.* at ¶¶ 1, 10-11. The court found that the defendant's postconviction petition made a substantial showing of prejudice under *Strickland* because defense counsel provided no mitigating evidence to rebut the State's argument that defendant was a bad parent with poor work history and no rehabilitative potential. *Id.* ¶ 39. *Cuevas* is distinguishable. In this case, trial counsel presented evidence of defendant's good relationship with his family, his success in high school, and his work in a summer job after graduating from high school, and the trial court expressly recognized defendant's rehabilitative potential. Moreover, the offense in this case is far more serious than the offense in *Cuevas*. Even if *Cuevas* were factually similar, it only supports advancing a postconviction petition to the third stage, not remanding for resentencing. *Id.* ¶ 41.

¶ 38 Because we find that defendant failed to establish prejudice under *Strickland*, we need not consider whether trial counsel's actions with respect to sentencing were objectively reasonable.

_____

[4]We acknowledge that failure to investigate a potential mitigation witness, in this case Guerrero, is not a strategic decision. See *People v. Towns*, 182 Ill. 2d 491, 514 (1998) ("counsel's presentation of mitigation is not deemed to be a legitimate strategy without a reasonable investigation into mitigating circumstances."). Nevertheless, *Glover* is not sufficiently similar to this case as to require reversal, and we resolve this appeal based on the prejudice prong of *Strickland* in any event.

See *People v. Cherry*, 2016 IL 118728, ¶ 24 ("Because a defendant must satisfy both prongs of the *Strickland* test to prevail, the failure to establish either precludes a finding of ineffective assistance of counsel."). Accordingly, the trial court properly denied defendant's amended motion raising claims of ineffective assistance of trial counsel at sentencing.

¶ 39                                              III. CONCLUSION

¶ 40     For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 41     Affirmed.