NOTICE
Decision filed 04/22/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230534-U

NO. 5-23-0534

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 22-CF-346 |
| | ) | |
| DARRION A. MILES, | ) | Honorable |
| | ) | Randall B. Rosenbaum, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE McHANEY delivered the judgment of the court.
Justices Welch and Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) The trial court did not consider improper factors in fashioning defendant's sentence. (2) The trial court adequately considered defendant's rehabilitative potential. (3) Defendant's sentence was not excessive.

¶ 2    The defendant, Darrion A. Miles, entered an open guilty plea to the offense of first degree murder in exchange for the dismissal of four additional counts, dismissal of pending charges in another criminal case, and dismissal of a pending petition to revoke the defendant's probation. He was sentenced to 37 years in the Illinois Department of Corrections (IDOC). On appeal, the defendant argues the trial court relied on improper factors in aggravation and failed to adequately consider his rehabilitative potential. He further argues that his sentence is excessive. For the following reasons, we affirm.

1

¶ 3                                    I. BACKGROUND

¶ 4    On March 24, 2022, the defendant was charged with three counts of first degree murder (720 ILCS 5/9-1(a)(1) (West 2020)), and under an alternative theory, an additional count of first degree murder (*id.* § 9-1(a)(2)) in Champaign County case No. 22-CF-346. Each count alleged that the defendant personally discharged a firearm that proximately caused the death of the victim, Yojevol Sturkey. Each charge carried a mandatory prison term of 20 to 60 years in IDOC, plus a mandatory 25-year to natural life sentencing enhancement pursuant to section 5-8-1(a)(1)(d)(iii) of the Unified Code of Corrections (730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2020)). Additionally, those sentences were required to be served consecutively to case No. 21-CF-392, which was pending and charged the defendant with attempt first degree murder, unlawful possession of a weapon by a felon, and aggravated battery with a firearm.

¶ 5    On March 23, 2023, the defendant entered an open guilty plea to a newly added count V in case No. 22-CF-346. The new count charged the defendant with first degree murder in that, without lawful justification and with the intent to kill the victim, the defendant "caused an object to enter [the victim's] body, thereby by causing" the victim's death. This charge carried a mandatory prison term of 20 to 60 years in IDOC. In exchange for the defendant's open plea, the State dismissed counts I-IV of case No. 22-CF-346 as well as case No. 21-CF-392. Additionally, the State dismissed a pending petition to revoke the defendant's probation in case No. 19-CF-759, with the defendant's probation being terminated unsuccessfully.

¶ 6    At the hearing on the defendant's open plea, the trial court admonished him regarding the applicable sentencing range and instructed him that any sentence must be served at 100%, plus up to three years of mandatory supervised release. The trial court further admonished the defendant

2

that any sentence imposed would be up to the court and could be anything within the 20- to 60-year range. The defendant said he understood those terms.

¶ 7     The State recited the following factual basis:

> "On October 25, 2014, at 2:14 a.m., police responded to 926 West Bradley Avenue in Champaign. Upon arrival, they saw the victim lying in the front yard with apparent wounds. The victim was transported to the hospital where he was pronounced dead. Investigating officers found seven metal objects near the street in front of the residence. According to witnesses, 'the victim and others were on the front porch *** when a person appeared *** in the same area that these seven metal objects were located and caused the metal objects to go from the street towards the porch. These metal objects eventually hit [the victim] ***.' "

During a police interview, the defendant admitted that he caused "the metal objects" to go toward the victim, causing his death.

¶ 8     The trial court found a sufficient factual basis for the defendant's plea and that he had been admonished pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 1997). The trial court further found that the defendant's plea was knowingly and voluntarily made. After accepting the plea, the trial court ordered a presentencing investigation report.

¶ 9     The trial court held a sentencing hearing on May 10, 2023. By agreement, the State entered People's Exhibit 1, which were disciplinary records from both Kankakee and Champaign County Correctional Center. Additionally, Detective Matt Bross testified about case No. 21-CF-392, which was dismissed pursuant to the defendant's open plea. In that case, on April 10, 2021, police were dispatched to a Rantoul location regarding a reported shooting. Upon arrival, officers located a "shooting scene" and a vehicle that had crashed into a light pole. Witnesses stated that the shooting

3

suspect entered a silver SUV which sped away and crashed. After getting a description of the suspect, he was eventually located and identified as the defendant. When located by officers, the defendant fled and pursuing officers saw the defendant throw a handgun under a trailer. The gun was recovered and sent to the crime lab, along with numerous shell casings which were recovered from the original shooting scene. The shell casings "came back" to the gun that the defendant threw under the trailer. Witnesses positively identified the defendant as the shooter via a show-up.

¶ 10 Bross testified that the shooting victim, Antonio Thomas, said that upon his arrival at the shooting scene a subject dressed in orange approached him, made a comment about having "issues" with Thomas's brother, and then started shooting at him. Though shot several times, Thomas survived. Bross said an orange garment was located in the defendant's flight path which was consistent with witnesses' description of what the defendant was wearing. Security video surveillance also showed the defendant holding an orange garment.

¶ 11 Bross testified on cross-examination that there were two other individuals riding in the crashed SUV. His police report indicated that there were two people in orange sweatshirts on the day of the shooting. When he apprehended the defendant, who was referred to in the police reports as "severely under the influence," the defendant denied owning the recovered handgun and said he "picked it up some place else and was not 'a shooter.' "

¶ 12 The only evidence in mitigation offered by defense counsel was Defense Exhibit 1, a "Thinking for Change" letter, which was admitted without objection. The trial court said it had reviewed the letter and would consider the defendant's completion of this course as a mitigation factor. The defendant offered the following statement in allocution:

"This is to the victim's family.

I want to start, start with me asking for you all's forgiveness and give a deep, sincere apology for my actions.

First, I want to say I'm deeply sorry. I take full blame and responsibility for my actions. It is my fault. Please know that I am deeply sorry, and that I really apologize. May you all find it in your hearts to forgive me. I'm not the same young, dumb, stupid man I was back then. I'm a changed, humble, humble, better man. I know you all do not owe me any sympathy or any sorrow, and I understand if you hate me. You all have the right. I, I admit my wrong, and I wish I could take everything back from that night. Now know that I am sorry from the bottom of my heart.

That will be all, Your Honor."

¶ 13    Following arguments of counsel, the trial court made numerous observations and comments, including the fact that there was substantial mitigation present. The court stated:

"I have a concern for the seriousness of the offense, but I'm also considering the history and character of the defendant with the objective of restoring him to useful citizenship.

* * *

[The defendant] has pled guilty, and it's not very often that I find somebody willing to plead guilty to first degree murder. I have people who plead guilty all the time to drug cases, burglary cases, obstructing justice, things of that nature, but I've probably handled two dozen or more murder cases as a judge, and it's incredibly rare for somebody to own up to this and to actually plead. I end up having lots of trials for murder, and many times they have firearms which are involved, and those people are getting in my opinion 50 to 55 years generally, but [defendant] is here. He has taken responsibility for his actions. ***

5

He has spared the victim's family from testifying, going through a trial. He has accepted responsibility on the most serious type of offense in the state of Illinois, and I find that substantially mitigating."

¶ 14 After recounting Detective's Bross's testimony regarding case No. 21-CF-392, the trial court considered it as an aggravating factor:

"There are—there is at least one other person in orange or red, but similar to it, but on the flip side, there was a show-up and the defendant was identified, and the defendant fled and dropped a firearm which was attached to the casings which were used in that shooting. Very well may be that he got into an argument or others got into the argument and he jumped in. It's clear he was probably under the influence of some sort. But the fact is he is linked to some degree to another shooting, and I do find that aggravating as well.

* * *

The defendant says that he makes silly mistakes, and these were careless acts and he was being part of other people's problems and hanging around the wrong crowd. Shooting somebody I think can never be described as a silly mistake. Somebody's holding a gun, their finger's on the trigger and they pull the trigger, pointing the gun at somebody else."

¶ 15 The trial court also stated that a message must be sent to the people in the community because there was too much gun violence and illegal guns. The court also considered the nature of the defendant's prior criminal record as aggravating, as well as his prior failures to appear and failure to successfully complete criminal sentences. The court then stated:

"Having regard to the nature and circumstances of the offense and to the history, character, and rehabilitative potential for the defendant, this is a mandatory sentence to

6

prison between 20 and 60 years. The State's asking for 50. The defense is asking for something closer to 20. Frankly, I don't think either one is appropriate. There is aggravation here with his prior record, the deterrent message, his behavior in 21-CF-392, and I should also note his behavior while in jail. I am considering the jail records where he basically was disregarding orders all of the time from authority figures. He was kicking the doors. He refused lockdown. He refused to take his medication and the like. So I don't think the minimum is appropriate.

However, based upon the fact that he doesn't have a serious criminal record, he has the children who he purportedly helps with, he has taken substantial responsibility, including pleading guilty here, I don't think that 50 years is appropriate, either.

Under the totality of the circumstances, the court does believe that the appropriate sentence, upon the conviction of first degree murder, as set forth in count five, is a period of 37 years in the Illinois Department of Corrections, with three years of mandatory supervised release."

¶ 16　On July 7, 2023, the defendant filed a motion to reconsider sentence. A hearing on this motion was held on July 17, 2023, during which the trial court stated: "I recognize all of [the factors in] mitigation here, but I also do note that there was substantial aggravation in terms of the fact that there's the deterrent message, sending a message to not just [the defendant], but other people in our community who use weapons to deal with their differences." After the denial of his motion to reconsider sentence, the defendant filed a timely appeal.

¶ 17　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 18　The defendant argues that the trial court based its sentence upon improper aggravating factors and failed to adequately consider his rehabilitative potential. He also maintains that his

sentence is excessive. The State contends that since the defendant raises issues that were neither objected to at sentencing nor included in a motion to reconsider, they are forfeited. See *People v. Hillier*, 237 Ill. 2d 539, 544-45 (2010) (failing to contemporaneously object and raise an issue in a posttrial motion forfeits a sentencing contention on appeal). However, forfeiture is a limitation on the parties and not on the court. *People v. Custer*, 2019 IL 123339, ¶ 19. Accordingly, we choose to address the defendant's contentions of error.

¶ 19 The determination as to whether the trial court relied on improper factors in fashioning a defendant's sentence is a question of law, which we review *de novo*. *People v. Brown*, 2023 IL App (4th) 220476, ¶ 43. "There is a strong presumption that the trial court relied on proper legal reasoning in determining a sentence, and a court of review must consider the record as a whole, rather than focus on a few words or statements made by the trial court." *Id.* The burden is on the defendant to affirmatively establish that his sentence was based on improper considerations. *Id.*

¶ 20 The crux of the defendant's first argument is that the trial court relied upon an improper factor in aggravation when it made reference to the defendant's use of a "weapon" and stressed the need to deter gun violence. This was impermissible, according to the defendant, because count V, to which he pled guilty, charged only that the defendant "caused an object" to enter the victim's body thereby causing death. Additionally, the factual basis recited by the State at the time of the defendant's open plea specifically referenced "metal objects"; there was no mention of bullets, a gun, or a weapon. This argument is meritless.

¶ 21 Count V was specially worded, by agreement, to avoid use of the word "firearm" in order for the defendant to avoid the 25-year to natural life sentencing enhancement. "Prosecutors routinely negotiate disputed facts. They abide crime versions markedly different from their true view of events in order to achieve plea-bargained dispositions. Under proper circumstances, the

8

law tolerates fact-based concessions as a legitimate negotiation tool." *People v. Summers*, 291 Ill. App. 3d 656, 659 (1997). This is exactly what happened in this case. Count V shielded the defendant from a mandatory 25-year to natural life sentencing enhancement, which would also have been mandatorily consecutive to any sentence received in the attempt murder case that was dismissed as part of the plea. He now seeks to use count V as a sword. We respond to this gamesmanship with the legal analysis it merits: "That dog won't hunt."

¶ 22　The fact that count V, and the State's supporting factual basis, utilized creative semantics to avoid the sentencing enhancement, does not change the fact that the defendant was sentenced for the crime he was charged with, first degree murder. It further does not alter the fact that the defendant committed first degree murder by shooting the victim with a gun. The "metal objects" referenced by the State were not ninja throwing stars, slingshot pellets, or poison darts. They were bullets fired from the defendant's gun, which he admitted to police. The fact that, at sentencing, the trial court's finding did not mirror the State and the defendant's contrived factual basis fails to establish that the court relied on an improper aggravating factor. We decline to find error where the trial court chose to avoid linguistic acrobatics and instead chose to use common sense.

¶ 23　Contrary to the defendant's contention, we do not find instructive the decision in *People v. Daly*, 2014 IL App (4th) 140624, *abrogated on other grounds*. There, the trial court ignored a mountain of mitigating evidence and improperly refused to consider probation as a sentencing alternative. *Id.* The *Daly* court found that the trial court, in fashioning a sentence based upon the defendant's open plea to reckless homicide, did not consider the nature and circumstances of the offense to which the defendant pled guilty; rather, the trial court considered the nature and circumstances of the offense that was dismissed, that is, the aggravated driving under the influence charges. *Id.* ¶ 30.

9

¶ 24    Here, the defendant was sentenced to 37 years for the offense to which he pled guilty—first degree murder. Additionally, the defendant conveniently ignores the fact that the trial court properly considered, as aggravation, the defendant's conduct in case No. 21-CF-392, where it was undisputed that *the defendant was identified as the shooter of a gun*.

¶ 25    The defendant maintains that two statements made by the trial court at sentencing establish that the trial court erred in fashioning his sentence. We disagree. First, the defendant argues that by stating "[t]his is a difficult case to know what to do with," the trial court was acknowledging that the evidence at the sentencing hearing was closely balanced. Therefore, he contends, the trial court's consideration of improper sentencing factors tipped the scales in favor of requiring a remand for a new sentencing hearing. We find the decision of our sister court in *People v. Broomfield*, 2022 IL App (4th) 200329-U, ¶ 53, to be both analogous and persuasive ("Our review of the record reveals a thoughtful analysis from the trial court for a difficult sentencing decision the court admitted that it 'struggled with.' ").

¶ 26    Second, the defendant maintains that the trial court improperly relied on findings regarding the defendant's "behavior while in jail" which were unsupported by the evidence. Specifically, the trial court indicated it was "considering the jail records where [the defendant] basically was disregarding orders all of the time from authority figures." The defendant maintains that the disciplinary and incident reports offered by the State in aggravation do not support the trial court's belief that he was continuously engaged in disruptive behavior. In determining the correctness of a sentence, the reviewing court should not focus on a few words or statements made by the trial court but should consider the record as a whole. See *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 13 (citing *People v. Reed*, 376 Ill. App. 3d 121, 128 (2007)). Considering the record as a whole, it is abundantly clear that the trial court was painstakingly thorough in its analysis of the applicable

10

mitigating and aggravating factors. Thus, we find the trial court did not consider improper factors in fashioning the defendant's sentence.

¶ 27 The defendant next argues the trial court failed to adequately consider his rehabilitative potential. The Illinois Constitution requires courts to determine penalties " 'both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship.' " *People v. Bien*, 277 Ill. App. 3d 744, 755 (1996) (quoting Ill. Const. 1970, art. I, § 11). The trial court is vested with the responsibility for balancing between rendering justice and rehabilitating the defendant. *Id.* at 756. "Rehabilitative potential considers '[t]he nature and circumstances of the offense and the history and character of the defendant.' " *People v. Bruce*, 2022 IL App (1st) 210811, ¶ 35 (quoting *People v. Gibbs*, 49 Ill. App. 3d 644, 649 (1977)). The most important factor in sentencing is the seriousness of the offense, and the trial court does not need to give greater weight to a defendant's potential for rehabilitation or to mitigating factors than the weight that it assigns to the seriousness of the crime for which the defendant is convicted. *People v. Contursi*, 2019 IL App (1st) 162894, ¶ 24. The imposition of a sentence is left to the sound discretion of the trial court and will not be altered upon review absent an abuse of that discretion. *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 15. This standard of review is the most deferential available with the exception of no review at all. *Id.*

¶ 28 In pronouncing sentence, the trial court explicitly stated it considered the history and character of the defendant with the objective of restoring him to useful citizenship. The trial court was tasked to balance the seriousness of the offense—first degree murder—with the defendant's potential for rehabilitation. Accordingly, we find that the trial court adequately considered the defendant's rehabilitative potential.

11

¶ 29 Finally, the defendant maintains that his sentence is excessive. While a reviewing court is not meant to be a "rubber stamp" for a trial court's sentencing decision (*Daly*, 2014 IL App (4th) 140624, ¶ 26), a reviewing court may only disturb a sentence within statutory limits if the trial court abused its discretion. *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000). "An abuse of discretion occurs only if a sentence greatly varies from the spirit and purpose of the law or where it is manifestly disproportionate to the nature of the offense." *People v. Bunning*, 2018 IL App (5th) 150114, ¶ 16.

¶ 30 Under the facts presented, we do not find that the trial court abused its discretion in sentencing the defendant to 37 years. The mandatory sentencing range for first degree murder is between 20 and 60 years. The State sought a 50-year sentence, while the defendant sought the lower end of the range. The record overwhelmingly supports the conclusion that the trial court did not abuse its discretion in fashioning a sentence that was less than the applicable middle range. Thus, we do not find that the defendant's sentence is excessive.

¶ 31                                              III. CONCLUSION

¶ 32 For the foregoing reasons, we affirm the trial court's judgment.

¶ 33 Affirmed.